caj2linc kjc

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,              New York, N.Y.

4           v.                            11 Cr4. 114(MGC)

5  XING LIN,

6               Defendant.

7  ------------------------------x

8                                         October 19, 2012
                                          3:25 p.m.
9

10  Before:

11              HON. MIRIAM GOLDMAN CEDARBAUM,

12                                         District Judge

13

14                          APPEARANCES
15
   PREET BHARARA
16      United States Attorney for the
        Southern District of New York
17  BY:  PETER M. SKINNER
        Assistant United States Attorney
18

19  JOEL S. COHEN
        Attorney for Defendant
20

21

22  ALSO PRESENT:

23  BRENDA CHEN, Fuzhou Interpreter

24

25

caj2linc kjc

1            (In open court)

2            (Case called)

3            THE COURT:  Mr. Lin, have you seen the superseding

4  indictment that's been filed against you?  I think you should

5  get up.

6            THE DEFENDANT:  Yes, yes.

7            THE COURT:  And have you discussed it carefully with

8  your lawyer?

9            THE DEFENDANT:  Yes.

10           THE COURT:  I will be happy to explain anything to you

11  in it that you do not understand.  Do you understand what the

12  charges against you are?

13           THE DEFENDANT:  Yes, I do.

14           THE COURT:  Do you understand it well enough to enter

15  a plea to the charges?  I will be happy to explain them further

16  to you if you have any questions about them.

17           THE DEFENDANT:  I understand.  I plead not guilty.

18           THE COURT:  All right.  There are several counts here,

19  there are several crimes that are charged, so I am going to ask

20  you as to each of them how you plead.

21           Count One charges you with belonging to a criminal

22  enterprise, which charges a violation of a statute which

23  prohibits basically a racketeering conspiracy, and it is

24  charged that you were a member and indeed were the leader of a

25  racketeering conspiracy.  Do you understand that charge?

caj2linc kjc

1              THE DEFENDANT:  Yes.

2              THE COURT:  And how do you plead to that charge?

3              THE DEFENDANT:  Not guilty.

4              THE COURT:  Not guilty.

5          And then you are also charged in Count Two with

6     actually participating in a racketeering conspiracy which

7     charges that one of the racketeering acts of that criminal

8     enterprise was the murder of Chan Qin Zhou.  How do you plead

9     to that charge?

10             THE DEFENDANT:  Not guilty.

11             THE COURT:  There is a third charge in this

12    superseding indictment which charges you with murder in that

13    during and in relation to crimes of violence for which you may

14    be prosecuted in a court of the United States, and those crimes

15    of violence are named as extortion and conspiracy to commit

16    extortion, it is charged that you did use and carry a firearm

17    and caused the death of a person through the use of the

18    firearm.  Now, that is a charge really of doing it yourself but

19    also a charge of aiding and abetting somebody to do it.  And I

20    take it the charge here is that you told somebody to do it,

21    actually, is that correct?

22             MR. SKINNER:  That's correct, your Honor.

23             THE DEFENDANT:  No.

24             THE COURT:  A man known as Little Beijing, that you

25    told him to commit extortion -- wait a minute.  I am moving

caj2linc kjc

1    from three to four.  First, that you did tell him to shoot

2    Zhou, but it is also charged in Count Four -- first let me ask

3    you how you plead to Count Three, to the charge that you are

4    responsible for the murder of Chan Qin Zhou?  How do you plead

5    to that charge?

6              THE DEFENDANT:  Not guilty.

7              THE COURT:  And then Count Four, there are actually

8    four counts in this indictment.  It is also charged --

9              MR. COHEN:  Your Honor, actually there are --

10             THE COURT:  Is there a fifth?

11             MR. COHEN:  Yes.

12             MR. SKINNER:  There is a fifth, your Honor.

13             THE COURT:  I'm sorry.  I missed the fifth.  All

14   right.  There are five charges against you.  The fourth charge

15   is that you extorted money from another person who owned a bus

16   company by the wrongful use of threatened force and fear and

17   did, by that conduct, affect interstate commerce.

18             How do you plead to that charge?

19             THE DEFENDANT:  Not guilty.

20             THE COURT:  And it is also charged that you conspired

21   to do that, that is, you agreed with others to commit

22   extortion.

23             How do you plead to that?

24             THE DEFENDANT:  Plead not guilty.

25             THE COURT:  Very well.  I will enter your pleas and

5

caj2linc kjc

1     you may be seated.

2              Since there are many new charges here, I take it that

3     this case will not go forward to trial on the previously set

4     date, is that correct?

5              MR. COHEN:  That's correct, your Honor.  Couldn't be

6     ready by then.

7              THE COURT:  Right.  I think even if the trial date is

8     postponed, I think it is still a good idea to schedule a trial

9     date now.

10             Has all discovery been completed?

11             MR. SKINNER:  Your Honor, I was explaining to

12    Mr. Cohen before our conference today, there are three piece of

13    discovery relating to conduct of the enterprise generally that

14    the government would be seeking to introduce -- two bullets and

15    video that are referenced in New York City Police Department

16    reports that we have reviewed.  We are in the process of trying

17    to obtain that evidence, assuming it still exists.  It is old

18    evidence, one bullet from 2000 and one from 2003.

19             So I have described to Mr. Cohen what it is --

20             THE COURT:  I'm sorry.  What do you mean one bullet

21    from 2000 and one from 2003?

22             MR. SKINNER:  There were two shootings that the

23    defendant participated in that we will be seeking to introduce

24    as evidence of the existence of the enterprise, and assuming --

25             THE COURT:  Who was shot apart from the bodyguard?

caj2linc kjc

1          MR. SKINNER:  In one instance there was a dispute at a

2     gambling parlor in 2000 where the government alleges that we

3     can prove that the defendant and his coconspirators opened fire

4     in a gambling parlor in Chinatown, fled that gambling parlor,

5     and were subsequently stabbed by -- defendant was stabbed by

6     one of the people who worked for the owner of the gambling

7     parlor.

8          THE COURT:  Defendant was stabbed or defendant stabbed

9     someone?

10         MR. SKINNER:  The defendant was stabbed.

11         THE COURT:  Was stabbed.

12         MR. SKINNER:  There is a separate --

13         THE COURT:  What is the relevance of that?

14         MR. SKINNER:  Well, the government, in advance of

15    whatever the trial date is, will be filing a motion in which we

16    outline the evidence that we would seek to introduce as

17    evidence of the existence of the criminal enterprise, that is

18    here the criminal organization that the defendant ran.  And we

19    think we can prove, and we will argue in the papers beforehand,

20    that this particular shooting occurred in furtherance of the

21    enterprise itself and is evidence of the existence of the

22    enterprise that should be admitted.

23         Of course if the court disagrees, then we won't be

24    introducing that, but that is one additional thing we were

25    going to try and put in.  We flagged it to Mr. Cohen, and there

7

caj2linc kjc

1    is one bullet related to that shooting that we are trying to

2    get.  So we described that to him.  I don't think -- when and

3    if we are able to obtain --

4                THE COURT:  This is the mahjong parlor.

5                MR. SKINNER:  It was a rival mahjong parlor.  It was

6    not the defendant's mahjong parlor.

7                THE COURT:  The defendant operates a mahjong parlor?

8                MR. SKINNER:  The defendant did.  The defendant

9    operated multiple gambling parlors in Chinatown from 1996 to

10   the early 2000s, as alleged in the racketeering charges.

11               THE COURT:  What is the statutory period?  What is the

12   statute of limitations?

13               MR. SKINNER:  The statute of limitations on a RICO

14   charge is five years, but it can extend back so long as one act

15   in furtherance of the racketeering conspiracy or in furtherance

16   of the substantive racketeering enterprise occurred within five

17   years.  The allegation here is that one of the victims of the

18   defendant's crimes was extorted up until 2009 but that the RICO

19   enterprise runs back until at least 1996, which is when we have

20   evidence that the defendant was operating illegal gambling

21   parlors in Chinatown.  So the charge date range within the

22   indictment is 1996 until December of 2009.

23               THE COURT:  Is there a time at which he stopped

24   operating it?

25               MR. SKINNER:  Well, the evidence that we have is that

caj2linc kjc

the extortion payments finished in December 2009, so -- we have

every reason to believe there is a presumption that RICO

conspiracies would continue, that it would have continued up

until the time of his arrest, but the charge date period is to

the evidence that we have, so it runs until the end of December

2009.

In any event, I got a little off track, there are

three additional pieces of evidence that we are trying to

obtain from the New York City Police Department.  We have

described to Mr. Cohen what they are, and we will make them

available to Mr. Cohen when and if we are able to obtain them,

and there is no additional discovery that needs to be produced.

THE COURT:  You have concluded discovery?

MR. SKINNER:  Yes, your Honor, with the exception of

those three things.  And if we obtain any additional evidence,

say, medical records relating to the defendant's wounds at one

of these shootings or the stabbing, we will make them available

right away.  But for the time being we don't have anything else

to produce.

THE COURT:  Very well.

Mr. Cohen, how much time do you need?

MR. COHEN:  Your Honor, at the outset, this was a

difficult case to prepare because --

THE COURT:  It keeps moving.

MR. COHEN:  It keeps getting older.  Initially the

9

caj2linc kjc

1   homicide that was charged happened in 2004 and, and that's been

2   difficult to deal with.  But now we are going back eight years

3   beyond that to 1996.  So I am going to have to be looking at

4   where my client was at that time, where he lived, where he

5   worked.  So I think we are talking about significant additional

6   investigation.  I am a single practitioner.  I have been on

7   trial for almost three weeks before Judge Johnson in the

8   Eastern District with at least another week or two to go.  I am

9   thinking probably at least two months.  And of course I think

10  once the government files its *in limine* motion to admit

11  evidence of the enterprise, if that happens sooner rather than

12  later, it would certainly assist me in seeing (a) whether there

13  is going to be opposition to that and on what basis.  Of course

14  there is a presumption that the enterprise continues, but that

15  can certainly be rebutted by numerous things, and in this case

16  possibly by the fact that Mr. Lin was arrested in Canada, and

17  I'm not sure evidence exists he was in the United States even

18  for a significant portion of the time.

19          So I am thinking that we can either set a trial date

20  now several months hence or that the government could, by a

21  certain date, file its motion *in limine*, and once we see what

22  it is that we are deal with, then perhaps have a conference to

23  address that and fix a trial date at that time.

24          THE COURT:  Let me understand.  I thought at the

25  initial arraignment Mr. Lin told me that he had been living in

caj2linc kjc

1    the south.  Did I misunderstand?

2          MR. COHEN:  I think that was up to, if I recall

3    correctly, up until the time of the incident charged on July

4    30, 2004.

5          THE COURT:  I see.  And since that time he has been

6    living here?

7          MR. COHEN:  I didn't say that, Judge.  I said he was

8    arrested in Canada.  I am trying not to answer questions about

9    where he was living, but I know that he was arrested in Canada,

10   and it appears that there was some evidence that the government

11   has that he had been living in Canada for a substantial period

12   of time, which I have learned from reading the extradition

13   request.

14         THE COURT:  I see.  I see.  And when is it that you

15   contend that he was running gambling facilities in Chinatown?

16         MR. SKINNER:  1996 until the early 2000s.  I think the

17   indictment alleges up until --

18         THE COURT:  So it's really quite long time ago.

19         MR. SKINNER:  The gambling parlors, yes.  The gambling

20   parlors were late '90s/early 2000s.

21         THE COURT:  Where was he living at that time?

22         MR. SKINNER:  In New York City.  And then after the

23   shooting and stabbing, after the shooting in 2003, he then --

24   it is our belief that he then moved to Atlanta, where he was up

25   until the time of the shooting at the karaoke parlor -- that

caj2linc kjc

1   was the murder that was the original charge in the

2   indictment -- and that after that he fled the New York City

3   area, we are not sure exactly where he was for a period of

4   time, but that he eventually ended up in Canada.  Regardless,

5   during all of that period of time, on a monthly basis he

6   continued to collect extortion payments from one of the bus

7   company extortion victims.  So the government's argument is

8   going to be that enterprise --

9           THE COURT:  What do you mean throughout all that time?

10  What time are you talking about?

11          MR. SKINNER:  The time from the shooting in July of

12  2004 up until December of 2009, when the government's witness

13  says he stopped make the payments.  He said during that entire

14  period of time, roughly every month, I was getting money to the

15  defendant through instructions that the defendant would give

16  him as to who to pay, his wife or other people.  So the

17  government's argument is that despite the fact that the

18  defendant had fled the New York City area, certainly a large

19  portion of criminal activity alleged took place in New York,

20  and that he continued to -- he continued to benefit from the

21  enterprise right up until 2009, when the payments stopped,

22  regardless of where he may have been physically located.  But

23  we don't have any objection to setting a trial date and

24  scheduling a date by which we will file an enterprise motion,

25  you know, sufficiently in advance of the date to give Mr. Cohen

caj2linc kjc

1    time to respond.  That's obviously fine with us.

2            THE COURT:  I have another criminal trial scheduled to

3    begin on January 7 for which I have gotten various estimates of

4    length.  Off the record.

5            (Discussion held off the record)

6            THE COURT:  I think the safest thing is to set this

7    for the week starting February 4, if that's agreeable to

8    counsel and to the defendant, of course.

9            MR. COHEN:  I think that makes sense, your Honor.  I

10   would certainly urge Mr. Lin to agree that we require that time

11   in order to adequately prepare to defend against these very

12   serious charges.

13           THE COURT:  All right.  Mr. Lin, do you agree that I

14   should exclude the time between now and February 4 from the

15   Speedy Trial clock because you and your lawyers need to prepare

16   your defense in this case, to take that time to prepare your

17   defense?

18           THE DEFENDANT:  Yes.

19           THE COURT:  And I take it the government has no

20   objection.

21           MR. SKINNER:  No, your Honor.  We would join in the

22   application to exclude time.

23           THE COURT:  Very well.  Then I will set February 4 at

24   9:30 in the morning for the trial of this case.

25           Your best estimate of the length is what?

caj2linc kjc

1          MR. SKINNER:  Your Honor, I still think that, despite

2     the broadened scope of the charges, we are looking at a

3     two-week case at longest.  I think the government's trial

4     evidence will be five to six trial days, add on jury selection

5     and a defense case, and I think we are likely done in two

6     weeks.  It could go a little bit longer.

7          THE COURT:  I understand.  I am just asking for your

8     best estimate.  Nobody ever knows.

9          MR. SKINNER:  That's our estimate.  At this point in

10    time we do not think that there will be significant -- many

11    more new witnesses on top of the ones that we had planned to

12    call all along to prove up the murder and extortion counts that

13    were charged in the superseding indictment returned back in

14    August.  We certainly will require some additional time, but we

15    don't think we are talking about, you know -- we haven't turned

16    what was a one- to two-week trial into a one-month trial.  We

17    think it is still in the two-week range.

18          THE COURT:  Very well.  Then I will, as I said, set

19    trial for February 4, at 9:30 in the morning, and I will

20    exclude the time between now and then from the Speedy Trial

21    clock.  I will adopt Mr. Lin's view that the time between now

22    and then outweighs in the interest of justice, both his right

23    to a speedy trial and the public's right to a speedy trial.

24    And I will on that basis exclude the time between now and

25    February 4 from the Speedy Trial clock.

caj2linc kjc

1              Is there anything further?

2              MR. COHEN:  Not by us, your Honor.

3              MR. SKINNER:  No, your Honor.  I think that was a key

4     thing for us was the trial date.

5              THE COURT:  Very well.  You are all excused.

6              MR. SKINNER:  Thank you very much, your Honor.

7                              – – –

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25