D49VLINT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                        11 CR 114 (MGC)

XING LIN,

            Defendant.         JURY TRIAL

------------------------------x

                                     New York, N.Y.
                                     April 9, 2013
                                     9:55 a.m.

Before:

             HON. MIRIAM GOLDMAN CEDARBAUM,

                                     District Judge

                        APPEARANCES

PREET BHARARA,
    United States Attorney for the
    Southern District of New York
PETER M. SKINNER
JENNIFER E. BURNS
    Assistant United States Attorneys

JOEL S. COHEN
    Attorney for Defendant

ALSO PRESENT:  BRENDA CHEN, Fuchow Interpreter
                DANIEL YANG, Fuchow Interpreter
                JESSICA CHACE, Paralegal
                TIMOTHY VARIAN, Special Agent, HSI
                JIAYING WANG, Legal Assistant

D49VLINT

1              (Trial resumed)

2              (In open court; jury not present)

3              THE COURT:  While we are waiting for a jury panel,
4    there are a few housekeeping matters that I would like to
5    resolve.

6              The extortion in this case is in interstate commerce,
7    or so it's charged.  Is there any reason to talk about foreign
8    commerce in explaining interstate commerce?  Anything ought to
9    be claimed was -- affected commerce between a state and a
10   foreign government, a foreign country?

11             MR. SKINNER:  Not with respect to the extortion in
12   this case, your Honor, no.

13             THE COURT:  Well, with respect to what?

14             MR. SKINNER:  There will be testimony that the
15   defendant, after the shootings in the karaoke bar, moved his
16   gang to Toronto, Canada, and opened gambling parlors in
17   Toronto.

18             THE COURT:  Which charge is that in connection with?

19             MR. SKINNER:  The racketeering charge, your Honor.
20   It's evidence both of the racketeering enterprise that
21   continued until December 2009, and it's evidence of the
22   racketeering conspiracy which charges a conspiracy to operate
23   gambling parlors and engage in an illegal enterprise.

24             THE COURT:  You're charging operating gambling parlors
25   in Canada?

1     MR. SKINNER:  No, your Honor.  It's evidence that the
2 enterprise continued to operate, as charged, until December
3 2009.
4     THE COURT:  I understand.
5     But was the enterprise supposed -- the enterprise,
6 when it was here, did not affect foreign commerce.
7     MR. SKINNER:  Your Honor, the enterprise did
8 tangentially affect foreign commerce in that the extortion
9 payments continued until December of 2009.  And the evidence at
10 trial will show that the defendant was situated in Canada
11 during that time period.  The payments were made --
12     THE COURT:  So you're saying that extortion payments
13 were sent to the defendant in Canada?
14     MR. SKINNER:  Yes, your Honor.  That would be the
15 inference we're arguing from the evidence.
16     THE COURT:  You have evidence of that?
17     MR. SKINNER:  Well, the payments were made on a
18 monthly basis in cash to the defendant's wife as per the
19 defendant's instructions that the payments should be made to
20 his wife for a period of time for years before that.
21     THE COURT:  I see.  But what is the evidence that she
22 was sending the money to him?
23     MR. SKINNER:  It's an inference, your Honor.  We don't
24 have direct evidence.
25     THE COURT:  Maybe he wanted her to support herself

1     with it.
2              MR. SKINNER:  He may have.  He may have also wanted
3     some of it sent up to Canada.
4              THE COURT:  I understand.  But you have no evidence
5     one way or the other.
6              MR. SKINNER:  No direct evidence.
7              THE COURT:  Well, it's not matter of direct or
8     circumstantial; that's not really circumstantial evidence that
9     he was receiving it in Canada.
10             MR. SKINNER:  Well, your Honor, I believe that the
11    defendant, for a period of years, received the payments
12    directly.  And then, after he put himself in a position where
13    he had to flee, put another person in place to collect
14    payments.  We can certainly argue that there's circumstantial
15    evidence and an inference --
16             THE COURT:  I don't think that's circumstantial
17    evidence.
18             MR. SKINNER:  That's what we intend to argue.
19             THE COURT:  Circumstantial evidence is not that loose.
20             MR. SKINNER:  That would be the, as I said, tangential
21    effect on foreign commerce.  And, in any event, as I
22    explained --
23             THE COURT:  If it were, if it were, it's a question.
24    I'm not sure that I need to talk about foreign commerce.  I'm
25    just interested in how I'm going to explain these charges.

Case 1:11-cr-00114-SHS   Document 38   Filed 05/14/13   Page 5 of 18    5
D49VLINT

```
 1              MR. SKINNER:  Very well, your Honor.
 2              THE COURT:  I don't think foreign commerce is of great
 3    significance in that.
 4              MR. SKINNER:  I'm not arguing with you.  But I think
 5    that there is possibly -- not possibly, there is, as I argued
 6    in argument that there was, in fact --
 7              THE COURT:  I'm not sure I'm going to permit you to
 8    call that circumstantial evidence.  I'll have to hear the
 9    evidence.
10              MR. SKINNER:  You'll hear the evidence, your Honor.
11    And whether the jury --
12              THE COURT:  All right.  At least I know what you are
13    thinking.
14              MR. SKINNER:  Thank you, your Honor.
15              MR. COHEN:  Your Honor, respectfully, I would ask that
16    until we reach the point --
17              THE COURT:  I don't intend to charge the jury in the
18    voir dire.
19              MR. COHEN:  I understand.
20              I would just ask that the government not open on that
21    issue until we've reached a point in the trial where the Court
22    is in a better position to evaluate whether that evidence or
23    argument should even be made.
24              THE COURT:  Well, I don't think the government's going
25    to elaborate heavily on interstate commerce in their opening.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1              Am I wrong?
2              MR. SKINNER:  You're absolutely correct, your Honor.
3              THE COURT:  All right.
4              Now, you have several citations to the aiding and
5    abetting statute.  But there is nothing -- there are no factual
6    statements in the indictment about aiding and abetting.  They
7    are all substantive statements.  I don't like to -- well, this
8    is just really -- we'll discuss this at the charge conference;
9    I'm just raising it because these both relate really to the
10   charge and not to the voir dire.
11             Now, you charge overt acts in Count Five, which is a
12   conspiracy to commit extortion.  And as I understand, this,
13   again, is not a matter of great opening concern.  As I
14   understand it, it is unnecessary to charge overt acts in a
15   conspiracy to commit extortion.
16             MR. SKINNER:  That's correct, your Honor.
17             THE COURT:  So this is what I would call surplusage.
18             MR. SKINNER:  Your Honor, it was included in the
19   indictment to provide information for the defendant to
20   understand the nature of the crimes charged.
21             THE COURT:  This is like a bill of particulars in the
22   indictment.
23             MR. SKINNER:  To some extent, your Honor, yes.
24             THE COURT:  All right.
25             MR. SKINNER:  But I agree with you, the overt act

1    requirement is not required, and we have no issue with taking
2    the overt acts out of the version of the indictment that is
3    sent to the jury.
4             THE COURT:  Good.  That's sent to the jury.  That's
5    the important thing.  I don't want to confuse the jury.
6             MR. SKINNER:  We actually did not redact that out of
7    the redacted indictment that we sent over last week, but we'll
8    take care of that straightaway.
9             THE COURT:  Right.  As I said, these are matters I
10   will really address in greater depth at the charge conference.
11   But I also will not charge *Pinkerton*, which is an optional
12   charge, because *Pinkerton* -- the facts of the *Pinkerton* case
13   are so far afield from the facts of this case, that I don't
14   find it an appropriate source for the charge.  I'm just giving
15   you reference for the information for the future.
16            I think in the voir dire I will ask the jury with
17   respect to places only, something like:  You will hear during
18   the course of the trial reference to a karaoke bar on Kissena
19   Avenue in Queens, which is no longer there.  Are any of you
20   familiar with that bar?
21            That's the one place question I'm going to ask.
22            MR. SKINNER:  That's fine, your Honor.  I just note
23   it's actually Kessina Boulevard, not Kessina Avenue.
24            THE COURT:  Thank you.  Yes.  I have it written
25   properly, I just...

1            All right.  Now, is there anything else --
2            MS. BURNS:  Your Honor, we did --
3            THE COURT:  -- before the jury panel arrives?
4            MS. BURNS:  We did revise the list of names just to
5    include some witnesses that had not been on our list back in --
6            THE COURT:  You have added witnesses?
7            MS. BURNS:  We have.
8            THE COURT:  Well, I have not received it.
9            MS. BURNS:  They are included on this list here.  I
10   can give a copy up to your Honor.
11           THE COURT:  Very well.
12           Now, who are all these many people?
13           MS. BURNS:  These are the names we expect.  They are
14   both witnesses and names that are going to come out in the
15   course of the testimony, your Honor.  If your Honor wants a
16   separate listing of anticipated witnesses, I can provide that,
17   as well.
18           THE COURT:  No, no, no.  I don't need to tell the jury
19   who the witnesses are going to be.
20           MS. BURNS:  Right.  That was what I anticipate, your
21   Honor.  So it is a lengthy list, but comprehensive.
22           THE COURT:  Oh, this is a substitute, is that what
23   you're offering?
24           MS. BURNS:  Yes.
25           THE COURT:  For the list that I have already.

```
     D49VLINT
```

1               MS. BURNS:  Yes, your Honor.
2               THE COURT:  All right.  So I'll switch to this one.
3               MS. BURNS:  Thank you.
4               MR. COHEN:  Your Honor, I have two potential names to
5      add to the list of people that might either be witnesses or
6      about whom people will hear.
7               One is Mary Wang, and the other is Detective Keith Ng,
8      N-G.
9               THE COURT:  Well, I will ask them if they recognize
10     those names or know any of those persons.
11              Just tell me again who they are.
12              MR. COHEN:  Mary Wang, W-A-N-G, and retired detective
13     Keith Ng, Keith, K-E-I-T-H, N-G.
14              THE COURT:  I'm slow.  Mary Wang, W-A-N-G, or --
15              MR. COHEN:  Yes.
16              THE COURT:  And?
17              MR. COHEN:  Detective -- Retired Detective Keith,
18     K-E-I-T-H, Ng, N-G.
19              THE COURT:  All right.  Thank you.
20              MR. COHEN:  Two questions, your Honor.
21              THE COURT:  Yes.
22              MR. COHEN:  With respect to the seating of the
23     prospective jurors, are we going to have one through six in the
24     front row or one through seven in the front row?
25              THE COURT:  We're going to fill all the seats.

                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

D49VLINT

1              MR. COHEN:  No, I understand.
2              THE COURT:  We're going to have one through eight.
3         Did they remove a seat from this jury box?
4              MR. COHEN:  I see seven in the front row.
5              THE COURT:  I see a space in the jury box.  We've
6    always had eight.
7              MR. COHEN:  Okay.
8              THE COURT:  What happened to the second seat?  We
9    normally have 18 in the jury box, and the second row seems to
10   be crowded.
11             MR. COHEN:  And my other question, your Honor, was --
12             THE COURT:  I don't know who's -- we should --
13             THE DEPUTY CLERK:  This is the way we have it, Judge.
14             THE COURT:  Seven, 14, and four is 18, yes.  All
15   right.
16             MR. COHEN:  So it will be one through seven, and then
17   eight in the --
18             THE COURT:  Correct.
19             MR. COHEN:  -- further seating.
20             THE COURT:  Correct.
21             MR. COHEN:  Okay.
22             THE COURT:  We'll go in sequence up to 18.
23             MR. COHEN:  Gotcha.  And, your Honor, may I just step
24   out to the rest room before the jurors come in?
25             THE COURT:  Yes.  I will question jurors who sit in

1  the back, as well.
2           MR. COHEN:  I understand that.
3           And if we have 18 here, I'm assuming that the juror to
4  the furthest left will be No. 19?
5           THE COURT:  We will give that juror a number, but I
6  don't know whether I'm going to start at that end or this end.
7           MR. COHEN:  Okay.
8           THE COURT:  But, yes, we will number each of the
9  jurors in sequence.
10          MR. COHEN:  Okay.
11          THE COURT:  And you will hear the number.
12          MR. COHEN:  And can I step out to the rest room,
13 Judge?
14          THE COURT:  I'm sorry?
15          MR. COHEN:  May I step out to the rest room?
16          THE COURT:  Yes, of course.
17          Actually, we can take a five-minute recess, because
18 I've just been advised that there is some materials being read
19 to the prospective jurors, and they will be here in about,
20 what, ten minutes?  So we can take a ten-minute recess.
21          MR. SKINNER:  Thank you, your Honor.
22          (Recess)
23          THE COURT:  Please be seated.  I understand the jury
24 panel is on their way.
25          (Pause)

1            THE COURT:  There seems to be some confusion in the
2    jury room, I'm sorry to say.  I'm going to take a brief recess.
3            I'll be back.
4            (Recess)
5            (A jury of 12 and 5 alternates was impanelled and
6    sworn)
7            THE DEPUTY CLERK:  Thank you.
8            THE COURT:  I'd just like to give you a few
9    preliminary instructions before you follow Mr. Daniels into the
10   jury room, which will be your home away from home during the
11   course of this trial.
12           When you arrive in the morning, you will go to that
13   room in the back of the courtroom and leave your clothes, if
14   we're not yet summer, because this morning was like summer.
15   And those who come by 9:30 will get muffins and coffee there.
16   And you will return there to refresh yourselves during the
17   course of the day.  And in the meantime you will give
18   Mr. Daniels your address and telephone number so that he can
19   keep in touch in the event that we need to.
20           But I just now want to tell you a few things that you
21   should know in connection with the trial.
22           I'd like to give you a little background on what will
23   happen during the trial.  At the end of the trial, I will give
24   you more detailed guidance on how you ought to go about
25   reaching your verdict.  But now I simply want to explain how

1    the trial will proceed.
2             This is a criminal case, as we all know.  The
3    defendant has been charged with the commission of federal
4    crimes in an indictment filed by a grand jury sitting in this
5    district.  The indictment is simply a description of the
6    charges made by the government against the defendant; it is not
7    evidence of anything.  The defendant has pleaded not guilty to
8    the charges, and denies committing the offenses charged.  The
9    defendant is presumed to be innocent, and you may not find him
10   guilty unless all of you unanimously find that the government
11   has proved his guilt beyond a reasonable doubt.
12            The first step in the trial will be an opening
13   statement by the government.  The government goes first because
14   it has the burden of proof, as I've explained.  In its opening
15   statement, the government will tell you about the evidence
16   which it intends to put before you.  But just as the indictment
17   is not evidence, neither is the opening statement evidence.
18   Its purpose is only to help you understand what the evidence
19   will be and what the government will try to prove.  The lawyers
20   are not witnesses.  Witnesses are people with firsthand
21   knowledge of what happened, and they will testify under oath.
22   The lawyers are not witnesses.
23            After the government's opening statement, the
24   defendant's lawyer may make an opening statement, but he is not
25   required to do so.

1            The government will then offer evidence that it says
2    will support the charges against the defendant.  The
3    government's evidence will consist of the testimony of
4    witnesses, as well as documents and exhibits.
5            Some of you have probably heard the terms
6    "circumstantial evidence" and "direct evidence."  Do not be
7    concerned with these terms.  You hear it too much on
8    television, but that's not the law of the United States.  You
9    are to consider all the evidence received during the trial.
10           After the government's evidence is presented, the
11   defendant's lawyer may present evidence on the defendant's
12   behalf, but he is not required to do so.  I remind you that the
13   defendant is presumed to be innocent, and that the government
14   must prove the guilt of the defendant beyond a reasonable
15   doubt.  The defendant does not have to prove his innocence.
16           After you have heard all the evidence, the government
17   and the defendant will each be given time for their final
18   arguments.  I just told you that the opening statements by the
19   lawyers are not evidence.  The same applies to the closing
20   statements.  The closing arguments, they are not evidence
21   either.
22           In their closing arguments, the lawyers, both for the
23   government and the defendant, will attempt to summarize their
24   cases and help you to understand the evidence that was
25   presented.  But the lawyers are not witnesses; they have no

1     personal knowledge of the facts.
2              The final part of the trial occurs when I instruct you
3     about the rules of law that you are to use in reaching your
4     verdict.  After hearing my instructions, you will leave the
5     courtroom together to make your decision.  Your deliberations
6     will be secret.  Nobody will know what your discussions are
7     outside of the jury room.
8              During the course of the trial -- right.  And your
9     deliberations will be secret.
10             During the course of the trial, you should not talk
11    with any witness or with the defendant or with any of the
12    lawyers in the case.  Please do not talk with them about any
13    subject at all.  In addition, during the course of the trial,
14    you should not talk about the trial with anyone else:  Not your
15    family, not your friends, not the people you work with.  Also,
16    you should not even discuss the case among yourselves until you
17    have heard all of the evidence, and I have instructed you on
18    the law, and you have gone to the jury room to make your
19    decision at the end of the trial.  It's important that you wait
20    until all the evidence is received and you have heard my
21    instructions on the rules of law before you deliberate even
22    among yourselves.  Evidence comes in bit-by-bit and
23    piece-by-piece, and it's not until you've heard it all that you
24    are ready to deliberate.
25             Please do not permit any third person to discuss the

1   case in your presence.  And if anyone does so, despite your
2   telling that person not to, please report that fact to me as
3   soon as you are able.  You should not, however, discuss with
4   your fellow jurors either that fact or any other fact that you
5   feel is necessary to bring to my attention.
6            Let me add that during the course of the trial, you
7   will receive all the evidence you properly may consider to
8   decide the case.  Because of this, you should not attempt to
9   gather any information on your own which you think might be
10  helpful.  Do not engage in any outside reading on this case; do
11  not attempt to visit any places mentioned in the case; and do
12  not in any other way try to learn about the case outside the
13  courtroom.  The reason for these rules, as I'm certain you
14  understand, is that your decision must be made solely on the
15  evidence presented at the trial in this courtroom.
16           At times during the trial, a lawyer may make an
17  objection to a question asked by another lawyer or to an answer
18  by a witness.  This simply means that the lawyer is requesting
19  that I make a decision on a particular rule of law.  Do not
20  draw any conclusion from such objections or from my rulings on
21  the objections.  These only relate to the legal questions that
22  I must determine and should not influence your thinking.
23           If I sustain an objection to a question, the witness
24  may not answer it.  But do not attempt to guess what the answer
25  might have been had I allowed the question to be answered.

1   Similarly, if I tell you not to consider a particular
2   statement, you should put that statement out of your mind, and
3   you may not refer to that statement in your later
4   deliberations.
5           During the course of the trial, I may ask a question
6   of a witness.  If I do so, that does not indicate that I have
7   any opinion about the facts in the case.
8           Finally, let me clarify something you may wonder about
9   later.
10          During the course of the trial, I may have to
11  interrupt the proceedings to confer with the attorneys about
12  the rules of law which should apply.  Sometimes we will talk
13  here at the sidebar, side of the bench, but some of these
14  conferences may take time.  So as a convenience to you, I may
15  excuse you from the courtroom.  I will try to avoid such
16  interruptions as much as possible, but please be patient, even
17  if the trial seems to be moving slowly, because conferences
18  often save time for all of us.
19          Thank you all for your attention.  And I will see you
20  all tomorrow morning.  And if it is at 9:30, you will receive
21  coffee and muffins.  But everybody must be in the courtroom by
22  10 o'clock.
23          Have a pleasant evening.  And resist telling anybody
24  about what you've seen and heard.
25          (Jury excused)

1            THE COURT:  Unless there's anything further, we will
2     be in recess until tomorrow morning at 10 o'clock.
3            MR. SKINNER:  Nothing, your Honor.  Thank you.
4            MS. BURNS:  Thank you.
5            MR. COHEN:  Thank you, your Honor.
6            Have a good evening.
7            THE COURT:  You're all excused.
8            (Adjourned to April 10, 2013 at 10 o'clock a.m.)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25