D4OVLIN1

```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        11 CR 114 (MGC)

5   XING LIN,

6              Defendant.               JURY TRIAL

7   ------------------------------x

8                                       New York, N.Y.
                                        April 24, 2013
9                                       10:34 a.m.

10
    Before:
11
                    HON. MIRIAM GOLDMAN CEDARBAUM,
12
                                        District Judge
13

14                        APPEARANCES

15
    PREET BHARARA,
16       United States Attorney for the
         Southern District of New York
17  PETER M. SKINNER
    JENNIFER E. BURNS
18       Assistant United States Attorneys

19  JOEL S. COHEN
         Attorney for Defendant
20
    ALSO PRESENT:   BRENDA CHEN, Fuchow Interpreter
21                  DANIEL YANG, Fuchow Interpreter
                    LILY LAU, Fuchow Interpreter
22                  DANIEL CHAN, Fuchow Interpreter
                    JESSICA CHACE, Paralegal
23                  TIMOTHY VARIAN, Special Agent, HSI
                    JIAYING WANG, Legal Assistant
24

25
```

D4OVLIN1

```
 1              (Trial resumed)

 2              (In open court; jury not present)

 3         THE COURT:  Good morning.

 4         Please be seated.  Let's get the jury.

 5         MR. COHEN:  Your Honor, I have a motion.

 6         THE COURT:  Yes.

 7         MR. COHEN:  I indicated yesterday at the close of the

 8    day that I would move for a mistrial this morning after I had

 9    an opportunity to review in writing the government's rebuttal

10    summation.

11         I now make that motion for the reasons I'm about to

12    state, and because of my belief that the government's summation

13    amounted to, in essence, an ad hominem attack on defense

14    counsel, and, for that and other reasons, deprived Mr. Lin of

15    his right to a fair trial.  And I just want to review very

16    briefly the items that Mr. Skinner mentioned during his

17    rebuttal that I think cumulatively add up to this deprivation.

18         Initially, he indicated that -- on Page 999, he

19    stated:  "He's not saying that they were mistaken, he's saying

20    that they lied.  Seriously, that's what he's saying.  The

21    audacity of this defense."

22         I objected; your Honor sustained that objection.

23         In two further sentences later, he says:  "Let's take

24    a hard look at this alternative universe," suggesting that my

25    summation came out of the twilight zone.
```

D4OVLIN1

1          I objected to that; there was no ruling.

2          A couple pages later, on Page 1003, at Line 15, he

3    stated: "Is defense really saying that in the wake of this

4    horrific murder, these three people came together and decided

5    to frame Xing Lin because they thought -- "

6          And I objected because I had not suggested during my

7    summation that they had come together to create a frame, and I

8    thought it was improper.

9          You just said to move on.

10          Most egregious, I think, was that during the charge

11   conference, your Honor specifically made a finding that Dong

12   Jai, Cash, was not a witness that was available to both sides,

13   and that your Honor would not charge as such.

14          THE COURT:  Equally available witnesses.

15          MR. COHEN:  Right.

16          And despite your Honor's very clear instruction that

17   was the case, Mr. Skinner said at Page 1005:  "It's our burden;

18   he doesn't need to do anything.  That said, he knows where Cash

19   is.

20          "Objection.

21          "The defense attorney said --

22          "Objection.

23          "The defense in this case has repeatedly suggested

24   that everybody in Chinatown knows where Cash is."

25          And your Honor said:  "Just a moment.  Move on to

D4OVLIN1

something else."

THE COURT:  Well, I denied the application to include in the charge equally available.

MR. COHEN:  But, your Honor, I don't think that it's -- first of all, that's burden-shifting for him to suggest that I had to call any witness, much less a witness that your Honor indicated was not a witness available equally to both sides.

And because of the burden-shifting aspect of it and because your Honor made a finding that he wasn't equally available to both sides, I don't see how the government gets to stand up and says that he is equally available to both sides. It's not fair.

Moreover, after I specifically said, specifically said that the prosecutors, the agents in this case, had not gotten together to frame anybody, had not done anything underhanded, had not done anything improper, and that they had been sold a bill of goods by their witnesses, Mr. Skinner said:  "Mr. Cohen is a nice guy; he doesn't want to openly accuse the people at the front table of fabricating the case.  He went out of his way to say he didn't think that we made any promises to any of these witnesses.  But isn't he really saying that the front table was a part of this?

"Objection.

"That we're relying --

D4OVLIN1

1            "Objection.

2            "That we're relying --

3            "I've heard your objection."

4        A few lines later:  "What did the agents and

5   prosecutors in this case have to motivate them to suborn

6   perjury, to risk their careers?

7            "Objection."

8        Your Honor indicated that we shouldn't do much

9   objecting during closings, and I agreed with you.  But I felt

10  that what was being said was so egregious, that it needed to be

11  addressed promptly.

12       He then vouched for those witnesses --

13       THE COURT:  Well, you have certainly preserved your

14  objections.

15       MR. COHEN:  I understand.

16       He then vouched for his witnesses by stating that they

17  had testified truthfully.

18       Moreover, on Page 1007 at Line 18, Mr. Skinner said:

19  "If it's all a lie, how does the defendant explain the evidence

20  that couldn't have been fabricated?  How does he explain his

21  car at the scene?  How does he explain his documents?

22           "Burden shifting, your Honor.  Objection.

23           "I think you should move on to something else."

24       On Page 1009 --

25       THE COURT:  Well, I intend to tell the jury very

D4OVLIN1

1    clearly who has the burden of proof.  I think that that will

2    cure a lot of your objections.

3              MR. COHEN:  Well, Judge --

4              THE COURT:  But, in any event, I hear what you are

5    telling me, and I reserve decision.

6              MR. COHEN:  There's just one or two things I want to

7    add, if I may.

8              THE COURT:  Very well.

9              MR. COHEN:  At Page 1015:  "First, keep in mind that

10   dailo/follower relationship.  The dailo is on top; he tells the

11   followers what to do."

12             Me:  "Judge, this is improper rebuttal.  I'm sorry,

13   it's just improper rebuttal."

14             On Page 1018, he makes reference to Oh-Yang and why he

15   asked -- why Mr. Lin asked Oh-Yang to go back and get the car.

16             "Evidence that's corroborated by independent phone

17   records."

18             I again say:  "Judge, again, I never mentioned Oh-Yang

19   during my summation; I don't see how this is proper rebuttal,

20   I'm sorry."

21             Your Honor says:  "I think that that was not.  We're

22   going to strike that.  Not for that reason, because of the

23   absence of evidence as to what happened."

24             I think, Judge, that all of those things viewed

25   together did deprive Mr. Lin of his Sixth Amendment right to a

1027

D4OVLIN1

1    fair trial.  I think if your Honor is reserving decision on the

2    mistrial motion and intends to take care of this by instructing

3    the jury that what the lawyers say is not evidence, that your

4    Honor should make some specific references to what Mr. --

5            THE COURT:  I understand that's your view.

6            MR. COHEN:  I'm sorry, your Honor?

7            THE COURT:  Off the record.

8            (Off record)

9            MR. COHEN:  And finally, Judge, if the Court declines

10   to make specific instructions to the jury on these things, and

11   declines to at this time grant a mistrial motion, then I would

12   ask for five minutes surrebuttal.

13           THE COURT:  I'm sorry, that I deny.

14           MR. COHEN:  Fine.

15           THE COURT:  That I deny.

16           Let's get the jury.

17           (Jury present)

18           THE COURT:  Good morning, members of the jury.

19           We are now at the stage of the trial at which you

20   undertake your final function as jurors.  And here you perform

21   one of the most sacred obligations of citizenship, which is to

22   decide the questions of fact in this case.

23           You are to discharge this final duty in an attitude of

24   complete fairness and impartiality.  And, as I emphasized when

25   you were selected as jurors, you must have no bias or prejudice

1    for or against the government or the defendant.

2              This case is important.  It is important to the

3    defendant, who is charged with serious crimes.  It is equally

4    important to the government for the enforcement of the criminal

5    law is a matter of prime concern to the community.

6              Let me add, the fact that the government is a party

7    entitles it to no greater consideration than that accorded to

8    any other party to a litigation.  By the same token, it is

9    entitled to no less consideration.

10             I told you at the very start of the trial that your

11   principal function during the taking of testimony and admission

12   of evidence would be to listen carefully to the evidence and

13   observe each witness who testifies.  It has been obvious to me

14   that you have faithfully discharged this duty.  Your interest

15   never flagged, and you followed the evidence with close

16   attention.  I ask you to give me the same careful attention as

17   I instruct you on the law.

18             You are the sole and exclusive judges of the facts.

19   You determine the weight of the evidence.  You appraise the

20   credibility of the witnesses.  You draw the reasonable

21   inferences from the evidence.  And you resolve such conflicts

22   as there may be in the evidence.

23             You have now heard all of the evidence in the case, as

24   well as the final arguments of the lawyers.  As I've already

25   told you, anything that counsel either for the government or

1    defense may have said with respect to matters in evidence,

2    whether during the trial, in a question, in argument, or in

3    closing arguments, is not to be substituted for your own

4    recollection of the evidence.  So too anything that I may have

5    said during the trial or may refer to during the course of

6    these instructions as to any matter in evidence is not to be

7    taken in place of your own independent recollection.  You, and

8    you alone, are the judges of the facts.  And my duty is to

9    instruct you on the law.  It is your duty to accept these

10   instructions of law, and apply them to the facts as you

11   determine them.  The result will be the verdict.

12        You must accept the law as I give it to you.  If any

13   attorney has stated a legal principle different from any that I

14   state in my instructions, it is my instructions that you must

15   follow.  Needless to say, a personal view of any of the lawyers

16   in this case is entirely irrelevant and would be and should be

17   totally disregarded.  But you should not single out any one

18   instruction as alone stating the law.  You should consider my

19   instructions as a whole when you retire to deliberate in the

20   jury room.  It is not your function to consider the wisdom of

21   any rule that I state, regardless of any opinion that you may

22   have as to what the law is or what the law ought to be.  It

23   would violate your sworn duty to have based a verdict upon any

24   other view of the law than that which I give you.

25        At the beginning of the trial, I referred to certain

D4OVLIN1                         Charge

1    principles of law which apply in every criminal case.  I repeat

2    those principles now.  I remind you that the indictment, any

3    indictment, is not evidence.  An indictment is no more than a

4    formal method of accusing a person of having committed a crime.

5    You must give no weight whatsoever to the fact that an

6    indictment has been returned against the defendant.

7          The defendant has pleaded not guilty.  In doing so, he

8    denies each and every allegation against him.  That means that

9    the government has the burden of proving the charges against

10   the defendant beyond a reasonable doubt.  This burden never

11   shifts; it remains on the government throughout the entire

12   trial.

13         Under our system of law, the defendant is presumed to

14   be innocent of the charges against him.  This presumption of

15   innocence was in the defendant's favor at the start of the

16   trial, continued in the defendant's favor throughout the entire

17   trial, is in the defendant's favor even as I instruct you now,

18   and remains in the defendant's favor during the course of your

19   deliberations in the jury room.  It is removed only if and when

20   you are satisfied that the government has sustained its burden

21   of proving the guilt of the defendant beyond a reasonable

22   doubt.

23         What is a reasonable doubt?  The words almost define

24   themselves.  It is a doubt based on reason and common sense and

25   arising from the evidence, or lack of evidence.  It is a doubt

that a reasonable person would have after carefully weighing all of the evidence.  It is a doubt that would cause a reasonable person to hesitate to act in a manner of importance in his or her personal life.  Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character, that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own affairs.

A reasonable doubt is not a caprice or a whim, it is not a speculation or suspicion.  It is not an excuse to avoid the performance of an unpleasant duty.  And it is not sympathy.  In a criminal case, the burden is at all times upon the government to prove guilt beyond a reasonable doubt.  The test is reasonable doubt.  Proof beyond a reasonable doubt is sufficient to convict.

If, after fair and impartial consideration of all the evidence, you have a reasonable doubt about the guilt of the defendant based on the evidence or lack of evidence presented during the trial, you must acquit.

On the other hand, if, after fair and impartial consideration of all the evidence, you are satisfied of the guilt of the defendant beyond a reasonable doubt, you should vote to convict the defendant.

I should note, each of the five counts in the indictment charges a separate crime, and you must consider each count separately.

D4OVLIN1                         Charge

1          Count One charges the defendant with conspiring to

2    violate the federal racketeering statute, commonly known as

3    RICO.  This means that the defendant has been charged with

4    conspiracy to conduct or participate in the affairs of an

5    enterprise through a pattern of racketeering activity.

6          Count Two charges that the defendant participated in

7    the conduct of an enterprise through a pattern of racketeering

8    activity, specifically, murder, conspiracy to commit murder,

9    extortion, extortion conspiracy, and operating illegal gambling

10   businesses.

11         Count Three charges the defendant with murder, and

12   aiding and abetting the murder of Chan Qin Zhou and Mei Ying Li

13   by using a firearm during and in relation to extortion and

14   conspiracy to commit extortion.

15         Count Four charges the defendant with extortion of the

16   owners of a bus company.

17         Count Five charges the defendant with conspiring to

18   extort the owners of a bus company.

19         I should note that the indictment alleges that the

20   defendant had a nickname, Ding Pa.  Use of a nickname is not

21   evidence of criminal activity.

22         Even though extortion and conspiracy to commit

23   extortion are charged in the last two counts of the indictment,

24   Counts Four and Five, I am going to begin by explaining those

25   charges first.  This is because the law of extortion is also

D4OVLIN1                    Charge

relevant to the crimes charged in Counts One, Two, and Three.

Extortion is a violation of the Hobbs Act, which is
Section 1951 of the criminal code.  That statute provides as
relevant here whoever in any way or degree obstructs, delays,
or affects commerce for the movement of any article or
commodity in commerce by extortion or attempts to do so is
guilty of a crime.  Extortion is defined as obtaining another
person's property or money with his consent when the consent is
induced through the wrongful use or threatened use of force,
violence, or fear.

Count Four reads as follows:

"From in or about March 2002, up to and including in
or about December 2009, in the Southern District of New York
and elsewhere, Xing Lin, also known as Ding Pa, the defendant,
and others, known and unknown, willfully and knowingly did
commit and attempt to commit extortion as that term is defined
in Title 18, which is the United States Criminal Code, Section
1951(b)(2), by obtaining money and property from and with the
consent of another person, to wit, individuals who owned a bus
company, which consent would have been and was induced by the
wrongful use of actual and threatened force, violence, and
fear, and thereby did obstruct, delay, and affect commerce, and
the movement of articles and commodities in commerce as that
term is defined in Title 18, which is the criminal code of the
United States, Section 1951(b)(3); to wit, it is charged that

D4OVLIN1                          Charge

1    Lin extorted and attempted to extort individuals who owned a

2    bus company for money, that is, extort for money of individuals

3    who owned a bus company."

4              I should note the following about extortion:

5              Extortion is a violation of the Hobbs Act, which, as

6    I've told you, is Section 1951 of the United States Criminal

7    Code.  That statute provides as relevant here, and I quote:

8              "Whoever in any way or degree obstructs, delays, or

9    affects commerce or the movement of any article or commodity in

10   commerce by extortion or attempts so to do is guilty of a

11   crime."

12             Extortion is defined as obtaining another person's

13   property or money with his consent when the consent is induced

14   through the wrongful use or threatened use of force, violence,

15   or fear.

16             Count Four reads as follows:

17             "From in or about March 2002, up to and including in

18   or about December 2009, in the Southern District of New York

19   and elsewhere, Xing Lin, also known as Ding Pa, the defendant,

20   and others, known and unknown, willfully and knowingly did

21   commit and attempt to commit extortion by obtaining money and

22   property with the consent of another person, to wit,

23   individuals who owned a bus company, which consent would have

24   been and was induced by the wrongful use of actual and

25   threatened force, violence, and fear, and thereby did obstruct,

D4OVLIN1                          Charge

delay, and affect commerce and the movement of articles and

commodities in commerce as that term is defined in Section

1951(b)(3) of the United States Criminal Code; to wit, Lin

extorted and attempted to extort individuals who owned a bus

company."  That is, Lin extorted and attempted to extort money

from individuals who owned a bus company.

In order to find that the defendant committed

extortion, you must find that the government has proved beyond

a reasonable doubt all of the following four elements:

First, that the defendant obtained money or property

from another person with that person's consent; second, that

the defendant induced that person's consent by the wrongful use

or threat of force, violence, or fear; third, that interstate

commerce was delayed, obstructed, or affected; and, fourth,

that the defendant acted knowingly and willfully.

The first element the government must prove and that

you must find for the charge that the defendant committed

extortion is proof beyond a reasonable doubt that the defendant

knowingly obtained money or property from another person with

that person's consent.  The term "property" includes money, as

well as tangible and intangible things of value.

Now, if and only if you find that the defendant

obtained money or property from another person, with that

person's consent, you must then determine whether the defendant

obtained the money or property through the wrongful use of

D4OVLIN1                         Charge

1    actual or threatened force, violence, or fear of physical

2    injury or economic harm.  You must determine whether the

3    defendant obtained the money or property by using any of those

4    unlawful means.  It is not necessary that the government prove

5    that force, violence, and fear were all threatened or used.

6    The government satisfies its burden if it proves beyond a

7    reasonable doubt that any of these methods were threatened or

8    used.

9         You should give the words "actual or threatened force,

10   violence, or fear" their common and ordinary meaning.  A threat

11   may be either implicit or explicit.  The force or violence

12   might be aimed at a third person or at causing economic rather

13   than physical harm.

14        In determining whether the defendant used fear to

15   obtain money or property, you must determine whether a victim

16   experienced anxiety, concern, or worry over expected personal

17   harm or economic loss.  These are matters which require you to

18   consider the victim's state of mind at the time of the

19   defendant's actions.  It is, as with other matters, involving

20   state of mind.  You cannot look inside a person's mind.  But a

21   careful consideration of the circumstances should enable you to

22   decide whether fear was the victim's state of mind.  Fear need

23   not be a consequence of an implicit or explicit threat.  The

24   wrongful use of fear requires that the defendant create or

25   instill fear, or use or exploit existing fear with the specific

D4OVLIN1                        Charge

1    purpose of inducing another to part with property.

2              The government must prove beyond a reasonable doubt

3    that the defendant was aware of a victim's fear, and did or

4    said something to wrongfully exploit that fear.  If you decide

5    that the defendant obtained money or property by the wrongful

6    use of actual or threatened force, violence, or fear, you must

7    then decide whether in doing so the defendant affected

8    interstate commerce.

9              Interstate commerce means commerce between two or more

10   states, such as the movement of goods, services, or money from

11   one state to another.  It's not necessary to find that the

12   effect on interstate commerce was substantial, nor is it

13   necessary to find that the effect on interstate commerce was

14   adverse.  A minimal effect is sufficient, so long as the

15   activities of the defendant affected interstate commerce in

16   some way.  If you decide that there was any effect on

17   interstate commerce, that is enough to satisfy this element.

18   It is not necessary to find that the defendant knew that his

19   acts would affect interstate commerce or that he intended to

20   affect such commerce.

21              Finally, in order to find the defendant guilty of

22   Count Four of the indictment, you must find that the defendant

23   acted knowingly and willfully with respect to the first and

24   second elements.  "Knowingly" means to act voluntarily and

25   deliberately, rather than mistakenly or inadvertently or

D4OVLIN1                    Charge

1    accidentally.  A person acts willfully who acts with the intent

2    to do something that the law forbids, that is, with a bad

3    purpose, to violate or deliberately disregard the law.  To act

4    willfully, a defendant need not know that he is breaking any

5    particular law; he needs only to be aware of the generally

6    unlawful nature of his conduct.

7         Knowledge and intent exist in the mind.  And again,

8    since it is not possible to look inside a person's mind, the

9    only way to arrive at a decision on knowledge and intent is for

10   you to take into consideration all of the facts and

11   circumstances shown by the evidence.

12        Count Five of the indictment charges conspiracy to

13   commit extortion.  Conspiring to commit extortion is also a

14   violation of the Hobbs Act, Section 1951 of the criminal code

15   of the United States.  That statute provides as relevant

16   whoever in any way or degree obstructs, delays, or affects

17   commerce, or the movement of any article or commodity in

18   commerce, by conspiring to do extortion is guilty of a crime.

19        Before I instruct you on the elements of a conspiracy

20   to violate the extortion statute, let me say a few words about

21   the difference between the conspiracy charged in Count Five,

22   and the extortion charged in Count Four on which I have just

23   instructed you.

24        The crime of conspiracy is separate and distinct from

25   the actual violation of the law, which the law refers to as a

substantive crime, the actual violation.  Count Four charges a

substantive violation of the extortion statute; that is, it

charges that the defendant actually committed extortion.  Count

Five charges the defendant with a different crime; that is, it

charges him with conspiring or agreeing to commit extortion.

A conspiracy is a kind of criminal partnership, an

agreement, of two or more persons who join together to commit

one or more crimes.  You may find the defendant guilty of the

crime of conspiracy even if the conspiracy was not actually --

the object of the conspiracy was not actually committed, that

is, if the conspiracy was not successful.

Congress has deemed it appropriate to make conspiracy

standing alone a separate crime, even if the conspiracy is not

successful.  In order to find that the defendant was a member

of the conspiracy charged in Count Five, you must find that the

government has proved beyond a reasonable doubt both of the

following two elements:

First, that at some time during the period alleged in

the indictment, the defendant entered into an agreement with at

least one other person to violate the federal extortion

statute; and, second, that the defendant unlawfully, knowingly,

and willfully participated in that agreement.

The first element that the government must prove

beyond a reasonable doubt is that at some time during the

period of March 2002 to December 2009, the defendant and at

D4OVLIN1                          Charge

 1    least one other person entered into the unlawful agreement

 2    charged in Count Five of the indictment.  In order for the

 3    government to satisfy this element, you need not find that the

 4    agreement or its object was written down or expressed in

 5    specific words.

 6           The government is not required to show that two or

 7    more people sat around a table and entered into a solemn pact

 8    orally or in writing, stating that they had formed a conspiracy

 9    to violate the law and spelling out all of the details.  But

10    the government must show that the conspirators came to a mutual

11    understanding to commit extortion by means of a joint plan.

12           In a very real sense, in the context of conspiracy

13    cases, actions often speak louder than words.  If, upon

14    consideration of all the evidence, you find beyond a reasonable

15    doubt that the defendant agreed to work with at least one other

16    person in furtherance of the object charged in the indictment

17    in Count Five, then proof of the existence of a conspiracy is

18    established.

19           According to the indictment, the object of the

20    conspiracy charged in Count Five was to commit extortion.  I

21    have just explained to you the elements of extortion.  If you

22    find that the defendant and at least one other person agreed to

23    accomplish that object, the unlawful purpose element will be

24    satisfied.

25           The second element that the government must prove

beyond a reasonable doubt in order to prove Count Five of the

indictment is that the defendant unlawfully, knowingly, and

willfully, participated in a conspiracy with at least one other

person.

I've already explained what it means to act knowingly

and willfully, and that knowledge and intent exists in the

mind.  Again, it is not possible to look inside a person's

mind.  So the only way to arrive at a decision on knowledge and

intent is for you to take all of the facts and circumstances

shown by the evidence into consideration.  But I want to

caution you that mere knowledge or acquiescence without

participation in the unlawful agreement is not sufficient.  A

defendant's mere presence at the scene of the alleged crime

does not make him a member of the conspiracy charged.

I turn back then to Count Two of the indictment,

rather than Count One, because I think it will be easier to

understand both Count Two and Count One if we start with Count

Two.

In Count Two of the indictment, the defendant is

charged with violating the Racketeer-Influenced and Corrupt

Organization Act, which is commonly known as RICO, R-I-C-O, a

statute which is found at Section 1962(c) of the United States

Criminal Code.  That statute provides, in pertinent part, and I

quote:

"It shall be unlawful for any person employed by or

D4OVLIN1                       Charge

associated with any enterprise engaged in or the activities

which affect interstate or foreign commerce to conduct or

participate directly or indirectly in the conduct of such

enterprise's affairs through a pattern of racketeering

activity."

          Count Two of the indictment -- well, initially, let me

say that the phrase "racketeering activity" is specifically

defined by Congress in the RICO statute to mean certain

criminal acts, and is not to be thought of as you might in an

everyday context.  Consequently, you must put aside any

preconceived ideas about the phrase "racketeering activities"

in your deliberations, and concentrate only on its meaning in

this statute.

          And the racketeering activities that are charged in

this case are set out in Count Two of the indictment.

          Count Two of the indictment charges that:  At all

times relevant to this indictment, Xing Lin, also known as Ding

Pa, the defendant, and others, known and unknown, were members

and associates of an organized crime enterprise led by Lin.

The Ding Pa Organization engaged in crimes including murder,

manslaughter, assault, operating illegal gambling businesses,

extortion, and other crimes.

          The Ding Pa Organization constituted an enterprise as

that term is defined in Section 1961, Sub 4, of Title 18 of the

United States Code.  That is, a group of individuals associated

D4OVLIN1                    Charge

1    in fact.  The enterprise was engaged in and its activities

2    affected interstate commerce.  The Ding Pa Organization was an

3    organized criminal group based primarily in the Chinatown

4    section of Manhattan that operated in the Southern and Eastern

5    District of New York and elsewhere.  This is the charge in the

6    indictment.  The Ding Pa Organization constituted an ongoing

7    organization whose members functioned as a continuing unit for

8    a common purpose of achieving the objectives of the exercise.

9    This enterprise was engaged in and its activities affected

10   interstate commerce.

11          This is a long count.

12          It is alleged in the indictment, in Count Two, that

13   Xing Lin, also known as Ding Pa, was a member and associate of

14   the enterprise which the government calls Ding Pa Organization,

15   and was, at various times relevant to the indictment, the

16   leader of the organization.  In that capacity, Lin participated

17   in the operation and management of the enterprise, and

18   participated in unlawful and other activities in furtherance of

19   the conduct of the enterprise's affairs, and profited from the

20   enterprise's affairs.

21          Count Two also charges that the purposes of the

22   enterprise included enriching the leaders, members, and

23   associates in the Ding Pa Organization through criminal

24   activities, preserving, protecting and augmenting the power,

25   territory, and financial profits of the Ding Pa Organization,

D4OVLIN1                    Charge

1   its leaders, members, and associates, through the use of

2   intimidation, violence, and threats of physical and economic

3   harm, and keeping victims and citizens in fear of the Ding Pa

4   Organization, its leaders, members, and associates, by

5   committing and threatening to commit physical violence, and by

6   causing and threatening to cause physical and economic harm.

7          The racketeering acts set out in Count Two of the

8   indictment, murder and conspiracy to commit murder, that is

9   charged as Racketeering Act 1.

10         Racketeering Act 2 is charged as follows:

11         From in or about March 2002, up to and including in or

12  about December 9th, 2009, Ding Pa, the defendant, and others,

13  known and unknown, willfully and knowingly combined, conspired,

14  and agreed together to commit extortion, as that term is

15  defined in the United States Criminal Code, by obtaining money

16  and property from and with the consent of other persons, to

17  wit, individuals who owned and operated a bus company.

18         Racketeering Act 3 is charged as follows:

19         In or about 1996, in the Southern District of New York

20  and elsewhere, Xing Lin, also known as Ding Pa, the defendant,

21  and others, known and unknown, willfully and knowingly did

22  conduct, finance, manage, supervise, direct, and own all and

23  part of an illegal gambling business, to wit, a mahjong parlor,

24  in violation of New York State Penal Law, and which business

25  involved five and more persons who conducted, financed,

D4OVLIN1                         Charge

1    managed, supervised, directed, and owned all and part of it,

2    and which business had been and remained in substantially

3    continuous operation for a period in excess of 30 days, and had

4    gross revenues of $2,000 in a single day, all in violation of

5    Section 1955 of the United States Criminal Code.

6            Racketeering Act 4, which is charged in Count Two of

7    the indictment, charges that:

8            From in or about 1996, up to and including in or about

9    1997, Xing Lin, also known as Ding Pa, willfully and knowingly

10   did conduct, finance, manage, supervise, direct, and own an

11   illegal gambling business, to wit, a gambling parlor where tien

12   len and other card games were played, in violation of New York

13   State Penal Law, and which business involved five and more

14   persons who conducted, financed, managed, supervised, directed,

15   and owned, all and part of it, which had been and remained in

16   substantially continuous business -- excuse me, continuous

17   operation for a period in excess of 30 days, and had gross

18   revenues of $2,000 in a single day.

19           Now, there is a fifth racketeering act charged in

20   Count Two of the indictment as part of the activities of the

21   RICO enterprise, that from in or about 1999, up to and

22   including in or about 2002, the defendant, Ding Pa, willfully

23   and knowingly did conduct, finance, manage, supervise, direct

24   and own, all and part of an illegal gambling business, to wit,

25   a gambling parlor where tien len and other card games were

D4OVLIN1                    Charge

1   played, in violation of New York State law, and which business

2   involved five and more persons who conducted, financed, etc.,

3   all and part of the business, and which business had been and

4   remained in substantially continuous operation for a period in

5   excess of 30 days, and had gross revenues of $2,000 in a single

6   day, in violation of Title 19 of the United States Code,

7   Section -- excuse me -- Section 1955 of the United States

8   Criminal Code.

9           Now, in order to prove the defendant guilty of the

10  crime charged in Count Two, the government must establish

11  beyond a reasonable doubt each of the following five elements:

12          First, that on or about the dates charged in the

13  indictment, the enterprise alleged in the indictment existed.

14          Second, that the enterprise affected interstate

15  commerce.

16          Third, that the defendant was employed by or

17  associated with that enterprise.

18          Fourth, that the defendant engaged in a pattern of

19  racketeering activity.

20          And, fifth, that the defendant conducted or

21  participated in the conduct of the enterprise through that

22  pattern of racketeering activity.

23          The first element that the government must establish

24  beyond a reasonable doubt is the existence of the enterprise

25  charged in the indictment.

D4OVLIN1                        Charge

1              An enterprise within the meaning of the RICO law does

2    not have to be a legal entity, such as a partnership, a

3    corporation, or an association.  Under RICO, an enterprise can

4    be a group of people who informally associate together for the

5    common purpose of engaging in a course of conduct.

6              In addition to having a common purpose, this group of

7    people must have an ongoing organization, either formal or

8    informal, and it must have a core of personnel who function as

9    a continuing unit.  This group may be organized for a

10   legitimate and lawful purpose or for an unlawful purpose.

11             Here, in this case, or so the indictment alleges, the

12   enterprise charged to have existed is what the government calls

13   the Ding Pa Organization.  Just because the indictment charges

14   that the Ding Pa Organization was an enterprise, does not

15   establish that there was an enterprise within the meaning of

16   the law.  That is for you to decide.

17             The first question that confronts you is has the

18   government proven beyond a reasonable doubt that the enterprise

19   charged in the indictment existed, that there was such an

20   enterprise.  In essence, the government contends that a group

21   of individuals which it calls the Ding Pa Organization

22   associated together in order to make money and achieve other

23   objectives through a pattern of racketeering.  If you find that

24   there was, in fact, a group of people characterized by, one, a

25   common purpose, two, an ongoing formal or informal organization

D4OVLIN1                        Charge

1    or structure, and, three, core personnel who functioned as a

2    continuing unit, then you may find that an enterprise existed.

3              (Continued on next page)

D4o6lin2                    Charge

1          THE COURT:  If you find that the enterprise charged in

2     the indictment existed, you must also determine whether this

3     enterprise continued in essentially unchanged form during

4     substantially the period charge in the indictment.  This does

5     not mean that everyone involved has to be the same.

6     Essentially the core of the enterprise has to have been the

7     same throughout.

8          In sum, your first task is to determine whether the

9     government has established beyond a reasonable doubt that,

10     first, the existence of the he price charged in the indictment.

11     If your answer to that question is yes, then you will proceed

12     to consider the other elements of Count Two.  If your answer is

13     no, that is to say if you have a reasonable doubt about the

14     existence of the enterprise charged in Count Two, then you must

15     acquit the defendant on this charge.  The second element that

16     the government must prove beyond a reasonable doubt is that the

17     activities of the enterprise had some affect on interstate

18     commerce.  I have already discussed what it means to have an

19     affect on interstate commerce in connection with Count Four and

20     you should apply those instructions here as well.

21          Now, if you conclude that the existence of the

22     enterprise and the affect on interstate commerce has been

23     established beyond a reasonable doubt, your next task will be

24     to determine whether the government has proved beyond a

25     reasonable doubt that the defendant was associated with that

D4o6lin2                           Charge

1   enterprise.

2          Now, for Count Two, the fourth element that the

3   government must prove beyond a reasonable doubt is that the

4   defendant engaged in a pattern of racketeering activity.  A

5   defendant engages in a pattern of racketeering activity if he

6   commits at least two acts of racketeering within 10 years of

7   each other and the two acts are sufficiently related to

8   continue in criminal activity of the enterprise to constitute a

9   pattern.  A RICO pattern may not be established without some

10  showing that the racketeering acts are interrelated and that

11  there is continuity or a threat of continuity in the activities

12  of the organization.

13         It is important to note that isolated acts of

14  racketeering do not form a pattern.  A pattern is an

15  arrangement or order of things or activity.  It is not the

16  number of acts, but the relationship that they bear to each

17  other or to some external organizing principle that renders

18  them ordered or arranged.

19         Criminal conduct forms a pattern only if it embraces

20  acts of racketeering that have the same or similar purposes or

21  results and participants and victims or methods of commission

22  that show a relationship between the acts of racketeering.  The

23  the racketeering acts must be interrelated.  The acts of

24  racketeering must also be a part of a continuing course of

25  conduct where the enterprise is an entity whose business is

D4o6lin2                         Charge

1   racketeering activity.  An act performed in furtherance of that

2   business automatically carries with it the threat of continued

3   racketeering activities.  If and only if you find that the

4   defendant committed at least two acts of racketeering, which

5   were part of such related and continuing criminal activity,

6   then you may find that the the government has proved that the

7   defendant engaged in a pattern of racketeering activity.

8           Further, it is not enough that all of you believe that

9   the defendant engaged in a pattern of racketeering activity by

10  committing at least two acts of racketeering.  You may not find

11  the defendant guilty unless all of you agree that he engaged in

12  a pattern of racketeering activity by committing at least two

13  particular acts of racketeering.  That is, you may not find the

14  defendant guilty if some of you think that only Acts

15  Racketeering One and Two were committed by the defendant and

16  the rest of you think that Acts Three and Four were committed

17  by the defendant.  There must be at least two specific acts of

18  racketeering that all of you agree were committed by the

19  defendant in order to find that the defendant engaged in a

20  pattern of racketeering activity.

21          I will instruct you on the specific racketeering acts

22  charged in the indictment in a moment, but before I do that I

23  will turn to the fifth and final element of the substantive

24  RICO charge which is Count Two of the indictment.  If you find

25  that the defendant engaged in a pattern of racketeering

D4o6lin2                        Charge

 1    activity, then you must consider the fifth and final element of

 2    the RICO offense charged in Count Two.  The government must

 3    prove beyond a reasonable doubt that the defendant conducted or

 4    participated in the conduct of the enterprise through that

 5    pattern of racketeering activity.  In other words, it is not

 6    enough that there be an enterprise and that the defendant

 7    engaged in a pattern of racketeering activities.  More is

 8    required.  To conduct or participate in the conduct of the

 9    enterprise means that the defendant must have played some part

10    in the operation or management of the enterprise.

11          The government must also prove that there is a

12    meaningful connection between the defendant's charged acts of

13    racketeering and the enterprise.  The government must prove

14    that the acts of racketeering were in some way related to the

15    affairs of the enterprise or that the defendant was able to

16    commit these acts solely by virtue of his position or

17    involvement in the affairs of the enterprise.

18          I will now review with you the six specific acts of

19    racketeering which are charged in Count Two of the indictment.

20    You need only find that the defendant committed one of the

21    crimes charged within a single racketeering act in the

22    indictment in order to find the entire racketeering act proved.

23    However, I remind you that you must all agree on which

24    particular crime the defendant committed in order to find that

25    he committed the racketeering act.  Again, if some of you find

D4o6lin2                      Charge

1    one part and the others of you find another part, you are not

2    all finding the same act and you may not find the defendant

3    guilty under those circumstances.

4            Now, the first racketeering act, Racketeering Act One

5    in the indictment charges the defendant with murdering and

6    conspiring to murder change Chan Qin Zhou on or about July

7    10th, 2004 in violation of New York State law.  As I just

8    instructed you, the violation of any one of the charged

9    statutes alone constitutes the commission of Racketeering Act

10   One.  Under New York State Penal Law 125.25, a person is guilty

11   of murder in the second degree when with intent to cause the

12   death of another person he causes the death of such person or

13   of a third person.  In order to find that the defendant

14   committed this charge of murder, the government must prove

15   beyond a reasonable doubt both of the following two elements:

16   First, that on or about July 30th, 2004, the defendant caused

17   the death of Chan Qin Zhou, and second that the defendant did

18   so with the intent to cause the death of Chan Qin Zhou.

19           Now, the term "intent" under New York law means

20   conscious objective or purpose.  Thus, a person acts with

21   intent to cause the death of another when that person's

22   conscious objective or purpose is to cause the death of

23   another.  Under New York State Penal Law Sections 105.15 and

24   125.25, a person is guilty of a conspiracy to commit murder

25   when with intent that the murder be committed he agrees with

D4o6lin2                         Charge

 1   one or more persons to engage in or cause the commission of the

 2   murder.  Accordingly, the government must prove beyond a

 3   reasonable doubt that all of the following three elements --

 4   that it must prove all of the three following elements:  First,

 5   that on or about July 10th, 2004 the defendant agreed with one

 6   or more persons to murder Chan Qin Zhou; second, that the

 7   defendant did so with the intent that the murder be committed;

 8   and third that the defendant or a person with whom he agreed

 9   committed the murder of Chan Qin Zhou.  I've already instructed

10   you on the conduct constituting murder and the meaning of

11   intent under New York law and you should follow any

12   instructions here as well.

13        Racketeering Act Two charges the defendant with

14   extortion and conspiracy to commit extortion of the owners of a

15   bus company.  From in or about March 2002 to December 2009 in

16   violation of federal law as I've already instructed you, any

17   one violation constitutes the commission of Racketeering Act

18   Two.  That is, violation of the extortion statute.  I've

19   already instructed you on the elements of extortion under

20   federal law in Count Four.  You should follow my instructions

21   here as well.  I've also already instructed you on the elements

22   of conspiracy commit extortion under federal law in Count Five.

23   You should follow my instructions here as well.

24        Now, Racketeering Act Three charges the defendant with

25   operating an illegal gambling parlor, specifically a Mahjong

D4o6lin2                    Charge

1  parlor, in or about 1996 in violation of federal law.  Section

2  1955 of the criminal code of the United States provides as here

3  relevant "Whoever conducts, finances, manages, supervises,

4  directs or owns all or part of an illegal gambling business is

5  guilty of a crime.

6          In order to find that the defendant committed this

7  charge of illegal gambling, the government must prove beyond a

8  reasonable doubt all of the following three elements:  First,

9  that the gambling business charge violated New York State law;

10  second that the gambling business was in substantially

11  continuous operation for a period in excess of 30 days or had

12  gross revenue of $2,000 or more in any one day; and third that

13  five or more persons including the defendant knowingly

14  conducted, finance, managed, supervised, directed or owned all

15  or part of such business.

16          Now I am going to explain illegal gambling.  The first

17  element the government must prove beyond a reason doubt is that

18  the gambling business charged in Count Two of the indictment

19  violated one of two New York State Penal Laws, but only one law

20  has to be violated.  Again, you must all agree on which law it

21  is.  You must be unanimous as to the law that was violated.

22  Let me begin by defining certain terms that are used in the New

23  York criminal statutes.  Under New York State Penal Law Section

24  225 gambling occurs and I quote "When a person stakes or risks

25  something of value upon the outcome of a contest of chance or

of future contingent event not under his control or influence

upon an agreement or understanding that he will receive

something of value in the event of a certain outcome.  A

contest of chance is any game in which the outcome depends in a

material degree on chance.  Something of value includes money."

          New York State Penal Law Section 225.05 makes it a

crime to "knowingly profit from unlawful gambling activity."

Profiting from gambling activity means when a person other than

as a player accepts or receives money or other property

pursuant to an agreement or understanding with any person

whereby he anticipates or is to participate in the proceeds of

gambling activity.  "Unlawful" simply means contrary to law.

Under New York law with certain exceptions not applicable here

gambling activity is not authorized by law.  Indeed is contrary

to law.

          Finally, a person knowingly profits from unlawful

gambling activity when he is aware that he is profiting from

gambling activity.  New York State Penal Law Section 225.10

makes it a crime to "knowingly profit from unlawful gambling

activity by engaging in bookmaking to the extent that a person

receives or accepts in any one day more than five bets totaling

more than $5,000."  I've already explained what it mean to

knowingly profit from unlawful gambling activity.  "Bookmaking"

mean unlawfully accepting bets from members of the public as a

business rather than in a casual or personal fashion upon

D4o6lin2                          Charge

1    the outcome of future contingent events.

2            I think we all should stand up and stretch for a

3    minute before I continue.

4            MR. COHEN:  Judge, may we have a five-minute break?

5            THE COURT:  Very well.  We'll take a five-minute

6    break.  I should comfort you with the thought that I will give

7    you a copy of this charge to take with you into the jury room,

8    but I first want to read it to you so that you will hear it as

9    well as read it.  Very well.  We'll take a five-minute recess.

10           (Jury excused)

11           (Continued on next page)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

D4o6lin2                          Charge

1              (In open court; jury not present)

2              MR. COHEN:  Two things I want to bring to your Honor's

3     attention now.  I didn't want to interrupt.  I think you read

4     Count Four twice to the jury inadvertently.  I would ask that

5     you instruct them not to give any particular attention to that

6     count, that it was inadvertently read twice.

7              THE COURT:  Let me ask the court reporter, is that

8     true?

9              MR. COHEN:  The government and I agree that you read

10    Count Four twice.

11             MR. SKINNER:  The indictment twice, your Honor.

12             MR. COHEN:  The indictment.

13             THE COURT:  The indictment but not the charge.

14             MR. COHEN:  It was lengthy, the second.

15             THE COURT:  What difference does that make?

16             MR. COHEN:  He don't want the jury to think they

17    should give any special emphasis to that.

18             THE COURT:  Do you think by the end of this charge

19    they will even remember?

20             MR. COHEN:  I don't know, Judge, but I have to protect

21    the record.

22             The second thing is that the homicides occurred on

23    July 30th, and both times that you referenced them you said

24    they occurred on July 10th.  I think that might confuse the

25    jury.

D4o6lin2                              Charge

1          MS. BURNS:  We had that as well, your Honor.

2          MR. SKINNER:  You said July 30th once and July 10th

3     twice.

4          MS. BURNS:  It was correct in the written charge.  It

5     was just spoken as to 10th.

6          THE COURT:  Thank you.

7          (Recess)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (In open court; jury present)

2    THE COURT:  You may all be seated.  We're coming down

3    the home stretch.

4    The second element the government must prove beyond a

5    reasonable doubt is that the gambling business was either in

6    substantially continuous operation for a period in excess of 30

7    days or that the gambling business had gross revenues of $2,000

8    or more in one day.  Either one is sufficient as long as you

9    are in agreement as to which one has been proven beyond a

10   reasonable doubt.  The government is not required to prove that

11   the business operated on an every day basis throughout the

12   entire period alleged.  Instead, the government must prove that

13   over some period in excess of 30 days the gambling business was

14   conducted with sufficient regularity that it existed as an

15   ongoing business rather than a casual activity.  The government

16   is not required to prove that the defendant knew that the

17   business was in substantially continuous operation.  It is for

18   to you determine the specific period when the business was in

19   substantially continuous operation.  If you find that the

20   period was longer than 30 days, then you should consider the

21   third element.

22   Another way the government can prove the second

23   element is by proving beyond a reasonable doubt that the

24   gambling business had gross revenues of $2,000 or more in any

25   one day.  Gross revenue means the total amount wagered in one

1  day regardless of how much was paid out to betters as winnings.

2  The government is not required to prove that the defendant knew

3  that the business had gross revenues of 2,000 or more in any

4  one day.  If you find that gross revenues were equal to or

5  greater than $2,000 on any one day, then you should go on to

6  consider the third element of illegal gambling.  The third

7  element the government must prove beyond a reasonable doubt is

8  that five or more persons, including the defendant, knowingly

9  conducted, financed, managed supervised, directed, or owned the

10 gamble business during the period when you found it was in

11 substantially continuous operation or had gross revenues of

12 $2,000 or more in one day.  The terms "finance," "managed,"

13 "supervised," "directed," and "owned" should be given their

14 every day ordinary meaning.

15       However, I would like to explain the term "conducted"

16 in more detail.  To conduct a gambling business means to

17 perform any act, function or duty which is necessary or helpful

18 in the regular operation of the business.  Five or more people,

19 including the defendant must have participated during the

20 period that you found that the gambling business or that you

21 find if you do that the gambling business was in substantially

22 continuous operation or had gross revenue of $2,000 or more in

23 one day.  The government does not have to prove that all five

24 were engaged at any particular time in conducting the business

25 as long as it proves that all five participated in the business

D4o6lin2                    Charge

1  during the period you identified.  It is not required that all

2  five be charged in the indictment.

3         Each of the five persons must have knowingly

4  participated in the business.  This means that each of them

5  knew that they were involved in conducting a gambling business

6  and were not involved by accident, negligence, or mistake.  The

7  government does not have to prove that the defendant or any

8  others knew that the gambling business was illegal.

9         Now, Racketeering Act Four of Count Two charges the

10  defendant with operating an illegal gambling parlor, a Tien Lin

11  or 13 card parlor from in or about 1996 to in or about 1997 in

12  violation of federal law.  I just instructed you on the

13  elements of illegal gambling under federal law.  You should

14  follow those instructions here as well.

15         Racketeering Act Five charges, that is Racketeering

16  Act Five in Count Two, charges the defendant with operating an

17  illegal gambling parlor, a Tien Lin or 13 Card parlor -- Tien

18  Lin is 13 Card in Chinese -- from in or about 1999 to in or

19  about 2002 in violation of federal law.  I've already

20  instructed you on the elements of illegal gambling under

21  federal law.  You should follow my instructions here as well.

22         Now, we come to Count One of the indictment, which

23  charges the defendant with conspiracy to violate the RICO

24  statute.  This means that the defendant has been charged with

25  agreeing to conduct or participate in the affairs of an

D4o6lin2                              Charge

enterprise through a pattern of racketeering activity.  Section

1962(d) of the United States Criminal Code provides that it

shall unlawful for any person to conspire to violate the RICO

statute.  I've already read part of Count One.  I will give you

a copy of the indictment to take into the jury room so you can

read it as well.  Before I instruct you on the elements of a

conspiracy to violate the RICO statute, let me say a few words

about the difference between the conspiracy charge in Count One

and the RICO charge contained in Count Two on which I've

already instructed you.

As I instructed you earlier in the context of Count

Five, a conspiracy to commit a crime is an entirely separate

and distinct offense from the substantive crime that is the

object of the conspiracy.  Count Two charges a substantive

violation of the RICO statute.  That is, it charges the

defendant with actually having participated in the affairs of

an enterprise through a pattern of racketeering activity.

Count One charges the defendant with a different crime.  That

is, it charges him with conspiring or agreeing to participate

in the affairs of an enterprise through a pattern of

racketeering activity.

A RICO conspiracy is never simply an agreement to

commit predicate acts that allegedly form a pattern of

racketeering nor is it merely an agreement to join in a

particular enterprise.  Rather, it is an agreement to conduct

D4o6lin2                          Charge

1    or to participate in the conduct of a charged enterprise's

2    affairs through a pattern of racketeering activity.

3            I've already explained the law of conspiracy in my

4    instructions to Count Five and you should follow those

5    instructions here as well except of course Count Five involves

6    a conspiracy to violate the federal extortion statute and Count

7    One charges a conspiracy to violate the federal RICO statute.

8    I will now provide you with additional instructions specific to

9    the RICO conspiracy charged in Count One.

10           In order to prove a defendant guilty of conspiracy to

11   violate the RICO statute as charged in Count One, the

12   government must establish beyond a reasonable doubt the

13   following four elements:  First, that an enterprise was

14   established as alleged in the indictment.

15           (Continued on next page)

16

17

18

19

20

21

22

23

24

25

1    THE COURT:  Second, that the enterprise affected

2    interstate commerce; third, that the defendant was associated

3    with or employed by the enterprise; and, fourth, that the

4    defendant knowingly and willfully agreed with at least one

5    other person to participate in the affairs of the enterprise

6    through a pattern of racketeering activity.

7         The first three elements of Count One are very similar

8    to the first three elements of Count Two, which I've already

9    instructed you.  However, they are different in an important

10   respect.  Unlike Count Two, for purposes of Count One, the

11   government is not required to prove that the alleged enterprise

12   was actually established -- this is a conspiracy charge -- or

13   that the defendant was actually employed by or associated with

14   the enterprise, or that the enterprise actually affected

15   interstate commerce.  Rather, because the agreement to commit a

16   RICO offense is the essence of the RICO conspiracy offense

17   charged in Count One, the government need only prove that if

18   the conspiracy offense were completed as contemplated, that the

19   enterprise would be established, that the defendant would be

20   employed or associated with the enterprise, and that the

21   enterprise would affect interstate commerce.

22        Of course, if you find that the alleged enterprise was

23   actually established, the first element would be met.

24   Likewise, if you find that the defendant was actually employed

25   by or associated with the enterprise, and that the enterprise

D4OVLIN3                        Charge

actually affected interstate commerce, then the second and
third elements would be met.

            I turn now to the fourth element, the agreement.

            To prove the defendant guilty of the crime charged in
Count One, the government must prove beyond a reasonable doubt
that the defendant knowingly and willfully became a member of
the conspiracy charged.  This means that in order to meet its
burden of proof, the government must show that the defendant
agreed to participate directly or indirectly in the affairs of
an enterprise through a pattern of racketeering activity.  You
may find -- but need not find -- that by actually committing
two or more racketeering acts, the defendant has shown that he
agreed to participate in the affairs of the enterprise through
a pattern of racketeering activity.  You may also find -- but
need not find -- that the defendant agreed to participate in
the affairs of the enterprise through a pattern of racketeering
activity if you find that he agreed personally to commit two or
more racketeering acts to further the affairs of the
enterprise.

            The government is not, however, required to prove that
the defendant actually committed or agreed to commit two or
more racketeering acts in order to find that this element has
been met.  Instead, the focus on this element is on the
defendant's agreement to participate in the objective of an
enterprise, to engage in a pattern of racketeering activity,

D4OVLIN3                          Charge

and not on the defendant's commission or agreement to commit

the individual criminal acts.  Thus, the government must prove

that the defendant entered into the charged RICO conspiracy,

and participated in some manner in the overall objective of the

conspiracy, and that the conspiracy involved the commission of

at least two racketeering acts.

I will now review the predicate acts that the

government alleges were committed or agreed to be committed as

part of the RICO conspiracy, all of which are listed in the

indictment.

As I just explained, the government is not required to

prove either that the defendant agreed to himself commit two of

these acts, or that he actually committed such acts, only that

the defendant conspired to participate in the conduct of the

affairs of the alleged enterprise.  However, proof that the

defendant himself agreed to or did commit such acts may be used

by you to conclude that the defendant agreed to participate in

the conduct of the alleged enterprise.

Because the substantive RICO crime, that is, the crime

that is the object of the conspiracy, requires the actual

commission of two racketeering acts, in order to prove a RICO

conspiracy, the government must prove that two of these acts

either were committed or were intended to be committed as part

of the conspiracy.  There is no requirement in Count One, the

RICO conspiracy, that the following predicate offenses were

D4OVLIN3                          Charge

1   actually committed by anyone.

2        Several of the charged categories of predicate

3   offenses charge a violation of more than one specific law.  In

4   order to find that a given predicate offense was, in fact, an

5   object of the RICO conspiracy, you need not find that the

6   object of the conspiracy involved violations of all of the laws

7   within each predicate act; rather, you need only find that the

8   object of the conspiracy involved the violation of at least one

9   of the specific laws.  However, you must agree unanimously on

10  which particular crime, if any, was the object of the charged

11  RICO conspiracy.

12       The defendant is charged in Count One with being a

13  member of a conspiracy engaged in racketeering activity

14  involving murder and conspiracy to commit murder, in violation

15  of New York State law.  I have already instructed you on the

16  elements of the substantive crimes, and you should follow my

17  instructions here, as well.

18       The defendant is charged in Count One with being a

19  member of a conspiracy engaged in racketeering activity

20  involving extortion, in violation of federal law.  I have

21  already instructed you on the elements of this crime, and you

22  should follow my instructions here, as well.

23       The defendant is charged in Count One with being a

24  member of a conspiracy engaged in racketeering activity

25  involving the operation of an illegal gambling business, in

violation of both federal law and New York State law, New York

State Penal Law 225.10.  I've already instructed you on the

elements of these crimes, and you should follow my instructions

here, as well.  However, I want to caution you that although a

violation of New York Penal Law Section 225.05 is one way, the

government may prove the first element of the federal gambling

law.  That section cannot, on its own, constitute a predicate

offense here; only a violation of federal law, that is, Section

1955 of the criminal code of the United States, can constitute

a predicate act.

Finally, I turn to Count Three.

If you have a reasonable doubt about whether the

defendant committed the crimes charged in Counts Four and Five,

you must acquit the defendant on Count Three.  If, and only if,

you find that the government has proven that the defendant

committed a crime charged in either Count Four or Count Five do

you proceed to consider Count Three.

Count Three of the indictment charges the defendant

with violating Section 924(j)(1) of the criminal code of the

United States.  Section 924(j) refers to another section of the

criminal code, Section 924(c).  And Section 924(c) provides, in

pertinent part, that, and I quote:

"Any person who, during and in relation to any crime

of violence for which he may be prosecuted in a court of the

United States, uses a firearm, shall be guilty of a crime."

1          Section 924(j) provides, in pertinent part, that:  "A

2   person who, in the course of a violation of Subsection C,

3   causes the death of a person through the use of a firearm,

4   shall, if the killing is a murder, as defined by statute, be

5   guilty of a crime."

6          Now, Count Three of the indictment reads as follows:

7          On or about July 30th, 2004 -- oh, and I should tell

8   you, I have used "July 10th" several times inadvertently.  I

9   have always meant July 30, which is the date in question in

10  Count Three and in the other counts that I charged you on.

11         So I'm going to read Count Three now.

12         "On or about July 30, 2004, in the Southern District

13  of New York and elsewhere, Xing Lin, also known as Ding Pa, the

14  defendant, willfully and knowingly, during and in relation to

15  crimes of violence for which he may be prosecuted in a court of

16  the United States, namely, extortion and conspiracy to commit

17  extortion, did use a firearm, and, in furtherance of such

18  crime, did cause the death of a person through the use of a

19  firearm, which killing is murder as defined in the criminal

20  code of the United States.  To wit, Lin directed another person

21  to shoot Chan Qin Zhou inside a club in Queens, New York.  And

22  the other person did shoot Zhou, as well as two bystanders, Mei

23  Ying Li, and another person, killing Zhou and Li, and wounding

24  Victim 3, in violation of Sections 924(j)(1) and (2) of the

25  United States Criminal Code."

D4OVLIN3                          Charge

1        Count Three of the indictment, which I've just read to

2   you, charges the defendant with violating Section 924(j)(1) --

3   well, I have read you the language of those statutes.

4        In order to find the defendant guilty of Count Three,

5   you must find that the government has proved beyond a

6   reasonable doubt all of the following four elements:

7        First, that the defendant committed either the crime

8   of violence charged in Count Four of the indictment, or the

9   crime of violence charged in Count Five of the indictment.

10  That is the first essential element of the crime charged in

11  Count Three.

12        Second, that the defendant knowingly used a firearm

13  during and in relation to the commission of one of those

14  crimes.

15        Third, that the defendant's conduct caused the death

16  of Chan Qin Zhou and Mei Ying Li.

17        And, fourth, that the death of those persons qualifies

18  as murder as I will define that term for you in a moment.

19        The first element that the government must prove

20  beyond a reasonable doubt is that the defendant committed one

21  of the crimes of violence charged in Count Four or Count Five

22  of the indictment.  I instruct you that extortion and extortion

23  conspiracy are crimes of violence which can be prosecuted in a

24  United States court.  However, in order to find that the

25  government has satisfied this element, you must find that the

D4OVLIN3                    Charge

 1   government has proved beyond a reasonable doubt that the

 2   defendant, in fact, committed one of the crimes charged in

 3   either Count Four or Count Five.  If you have a reasonable

 4   doubt about both Count Four and Count Five, you must acquit the

 5   defendant of the crime charged in Count Three.

 6            If you find beyond a reasonable doubt that the

 7   defendant committed the crime of violence charged in either

 8   Count Four or Count Five, then you must consider the second

 9   element of Count Three.

10            To establish the second element, the government must

11   prove beyond a reasonable doubt that the defendant knowingly

12   used or aided and abetted the use of a firearm during and in

13   relation to the crime which you find the government has proved

14   beyond a reasonable doubt.  A firearm is defined in Section

15   921(a)(3) of the United States Criminal Code to mean any weapon

16   which will or is designed to or may readily be converted to

17   expel a projectile by the action of an explosive.  I instruct

18   you that a gun is a firearm.  To knowingly use a firearm means

19   to use the firearm purposefully and voluntarily, and not by

20   accident or mistake.  Use of a firearm requires an active

21   employment of the firearm by the person.  Active employment

22   means brandishing, displaying, referring to a firearm so that

23   others present knew the defendant had the firearm available,

24   and, of course, firing or attempting to fire a firearm.

25            The government must establish that the defendant used

D4OVLIN3                        Charge

the firearm during and in relation to the commission of a crime

charged in this indictment of which you have found the

defendant guilty beyond a reasonable doubt; here, extortion or

extortion conspiracy.  The circumstances surrounding the

presence of the firearm must suggest that the defendant

intended to have a firearm available for use during the

commission of the underlying crime.

        And the third element of Count Three is that the

government must prove beyond a reasonable doubt that the

defendant's conduct caused the death of a person.

        The indictment charges that, as Count Three charges,

the defendant caused the death of Chan Qin Zhou and Mei Ying

Li.  A defendant's conduct may be found to cause the death of a

person if it had such an effect in producing that person's

death as to lead a reasonable person to regard the defendant's

conduct as a cause of the death.  The death of a person may

have one or more than one cause.  You need not find that the

defendant shot the victim or that he committed the final fatal

act.  The government need only prove beyond a reasonable doubt

that the conduct of the defendant was a substantial factor in

causing the victim's death.

        Now, in considering Count Three, you should apply the

following definition of "murder," which comes from Section 1111

of the criminal code of the United States.

        And I quote:  "Murder is the unlawful killing of a

D4OVLIN3                          Charge

1 human being with malice aforethought.  It includes murder that

2 is committed in the perpetration of or an attempt to perpetrate

3 any murder.

4          If you do not find beyond a reasonable doubt that the

5 defendant is guilty of Count Three, you should proceed to

6 consider another legal theory of criminal liability that is

7 called aiding and abetting.

8          In Count Three of the indictment, the defendant is

9 also charged with aiding and abetting the use of a firearm

10 during and in relation to the crimes charged in Counts Four and

11 Five, namely, extortion and conspiracy to commit extortion.  If

12 the defendant did not himself commit a crime, but aided and

13 abetted the commission of the crime by others, the defendant

14 may be found guilty of the crime.

15          The aiding and abetting statute, Section 2 of the

16 federal criminal code, reads as relevant here as follows:

17          "Whoever commits an offense against the United States,

18 or aids, abets, counsels, commands, induces, or procures its

19 commission, is punishable as a principle."

20          Under this statute, it is not necessary for the

21 government to show that the defendant performed the act with

22 which he is charged in order for you to find him guilty.  A

23 person who aids and abets another to commit an offense is just

24 as guilty of that offense as if he had committed it himself.

25 Accordingly, you may find the defendant guilty of Count Three

D4OVLIN3                        Charge

1   if you find that the government has proven beyond a reasonable

2   doubt that another person actually committed the offense with

3   which the defendant is charged, and that the defendant aided or

4   abetted that person in the commission of the offense.

5          As you can see, the first requirement is that you find

6   that another person has committed the crime charged.

7   Obviously, no one can be convicted of aiding and abetting a

8   criminal act of another if no crime was committed by the other

9   in the first place.  But if you do find that a crime was

10  committed, then you must consider whether the defendant aided

11  and abetted the commission of the crime.

12         In order to aid or abet another to commit a crime, it

13  is necessary that the defendant willfully and knowingly

14  associate himself in some way with the crime, and that he

15  willfully and knowingly seek by some act to help make the crime

16  succeed.  The mere presence of the defendant where a crime is

17  being committed, even coupled with knowledge by the defendant

18  that a crime is being committed, or the mere acquiescence by a

19  defendant in the criminal conduct of others, even with guilty

20  knowledge, is not sufficient to establish aiding and abetting.

21  An aider and abettor must have some interest in the criminal

22  venture.

23         To determine whether the defendant aided or abetted

24  the commission of Count Three, ask yourself these questions:

25         One.  Did the defendant participate in the crime

D4OVLIN3                        Charge

1    charged as something he wished to bring about?

2           Two.  Did the defendant associate himself with the

3    criminal venture knowingly and willfully?

4           Three.  Did the defendant seek by his actions to make

5    the criminal venture succeed?

6           If the answers to each of these questions is yes, then

7    the defendant is an aider and abettor.  If the answer to any of

8    these questions is no, the defendant is not an aider or

9    abettor.

10          As to all elements of the crimes, except venue, the

11   government has the burden of proof beyond a reasonable doubt.

12   With regard to venue only, the government meets its burden of

13   proof if it establishes that it is more likely than not that an

14   act in furtherance of the crime you are considering occurred in

15   the Southern District of New York.  In this case, the

16   government and the defendant have agreed that venue is proper

17   in this district for each of the crimes charged.

18          The law requires only substantial similarity between

19   the indictment and the proof.  That is sufficient.  With

20   respect to the dates mentioned in the indictment, the same

21   principle applies.

22          For example, the indictment charges that the RICO

23   conspiracy in Count One existed from 1996 up to and including

24   December of 2009.  The indictment charges that the extortion

25   conspiracy in Count Five existed from March of 2002 up to and

D4OVLIN3                    Charge

1    including December of 2009.  It's not essential that the

2    government prove that the conspiracy started and ended on those

3    specific dates.  It's enough if you find that, in fact, a

4    conspiracy was formed, and existed for some time within that

5    period.  The law requires only a substantial similarity between

6    the dates alleged in the indictment and the dates established

7    by the evidence.

8         You are the sole judges of all of the questions of

9    fact submitted to you and of the credibility of the witnesses.

10   Your authority, however, is not to be exercised arbitrarily; it

11   must be exercised with sincere judgment, sound discretion, and

12   in accordance with the rules of law that I give you.  You may

13   not speculate.

14        In making your determination of the facts in this

15   case, your judgment must be applied only to that which is

16   properly evidence.  The sworn testimony of the witnesses is

17   evidence.  The documents and exhibits actually received in

18   evidence are evidence.  Exhibits marked for identification, but

19   not received, are not evidence, nor are materials brought forth

20   to refresh a witness's recollection.  Stipulations, that is,

21   agreements between counsel that certain facts are true,

22   constitute evidence, and you must regard such agreed facts as

23   true.

24        There are two types of evidence that you may properly

25   use in deciding whether the defendant is guilty or not guilty.

D4OVLIN3                    Charge

1            One type of evidence is called direct evidence.

2     Direct evidence is the testimony of a witness about a fact in

3     dispute that the witness saw, heard, touched, or tasted.

4     Direct evidence can also be a document that self-establishes a

5     fact in this view.

6            Circumstantial evidence is evidence that does not

7     directly prove a fact in dispute, but that permits a reasonable

8     inference or conclusion that a fact exists or that a fact does

9     not exist.  That is all there is to circumstantial evidence.

10    You infer on the basis of reason and experience and common

11    sense from an established fact the existence or nonexistence of

12    some other fact.

13           Circumstantial evidence has the same weight as direct

14    evidence.  Federal law does not distinguish between direct

15    evidence and circumstantial evidence, but simply requires that

16    before convicting a defendant, a jury must be satisfied of that

17    defendant's guilt beyond a reasonable doubt from all of the

18    evidence in the case.

19           Now, what is not evidence?

20           The indictment, as I've already told you, is not

21    evidence.  Testimony that has been stricken or excluded is not

22    evidence, and may not be considered by you in any way in

23    rendering a verdict.  The lawyers' questions are not evidence.

24    It is the witnesses' answers that are the evidence, not the

25    questions.  And you may not treat the questions as evidence.

1          Arguments by lawyers are not evidence, because the

2     lawyers are not witnesses.  What they've said to you in their

3     opening statements and in their summations is intended to help

4     you understand the evidence to reach your verdict.  However, if

5     your recollection of the evidence differs from the lawyers'

6     statements about the evidence, it is your recollection that

7     controls.

8          So, too, you must not take the rulings that I have

9     made during the trial as an indication of my view as to what

10    your decision should be.

11         I should also say that counsel not only have the

12    right, but also are under a duty, to present whatever legal

13    objections there may be to the admissibility of evidence.

14    Counsel also have the right to ask for conferences at the bench

15    out of the hearing of the jury.  These deal with questions of

16    law which I alone must decide.  You should not draw any

17    inferences because counsel asks for a conference with the Court

18    at the bench out of the hearing of the jury.

19         You are being called upon to resolve the factual

20    issues in this case.  You will have to now decide where the

21    truth lies.  And a part of that decision will involve making

22    judgments about the testimony of the witnesses you have

23    listened to and observed.  In making those judgments, you

24    should carefully scrutinize all of the testimony of each

25    witness, the circumstances under which each witness testified,

D4OVLIN3                          Charge

prior inconsistent statements, if any, and any other matter in

evidence that may help you to decide the truth and the

significance of each witness's testimony.

There is no magic formula by which you should evaluate

testimony.  You bring with you to this courtroom all of the

experience and background of your lives.  In your everyday

affairs, you determine for yourselves the reliability or

unreliability of statements made to you by others.  The same

tests that you use in your everyday dealings are the tests you

should apply in your deliberations.  These tests apply to all

the witnesses.

For example, the fact that a witness is a law

enforcement officer does not in itself make that witness more

or less credible than any other witness.  You should size up

each witness individually.  The manner in which the witness

gave testimony on the stand, the opportunity that the witness

had to observe the facts about which the witness testified, the

probability or improbability of the witness's testimony when

viewed in light of all of the other evidence in the case, all

these are factors you should take into consideration in

determining the weight, if any, you should -- that you will

assign to a witness's testimony.

Your decision whether or not to believe a witness may

depend on how that witness impressed you.  Was the witness

candid, frank, and forthright, or did it seem as if the witness

D4OVLIN3                        Charge

1    was hiding something, being evasive in some manner?  How did

2    the witness's manner on direct examination compare with the

3    witness's manner on cross-examination?  Was the witness's

4    testimony consistent or was it contradictory?  Did the witness

5    appear to know what the witness was talking about?  And did the

6    witness strike you as someone who was trying to report

7    knowledge accurately?

8            If you find that any witness has deliberately

9    testified falsely as to any material issue in this case, you

10   may disregard all or any material -- or whatever part of that

11   witness's testimony you choose.  How much you choose to believe

12   a witness may be influenced by the witness's bias or interest.

13   Does the witness have a relationship with the government or the

14   defendant that may have affected how the witness testified?

15   Does the witness have some incentive or motive that might have

16   caused the witness to shade the truth?  Or does the witness

17   have some bias, prejudice, or hostility that may have caused

18   the witness consciously or not to give you something other than

19   a completely accurate account of the facts testified to?

20           Even if a witness is impartial, you should consider

21   whether the witness had an opportunity to observe the facts

22   testified about.  Ask yourselves whether the witness's

23   knowledge and recollection of the facts stand up in light of

24   all the other evidence.

25           In other words, what you must do in deciding

D4OVLIN3                          Charge

1    credibility is to size up each witness in light of that

2    person's knowledge and demeanor, prior inconsistent statements,

3    if any, the explanations given, and in light of all the other

4    evidence in the case, just as you would in any important

5    matter.

6            In deciding what to believe, remember that you should

7    use your common sense, your good judgment, and your experience.

8    There is no legal requirement that the government must

9    investigate or prove its case through any particular means or

10   use any particular investigative technique.  All of the

11   investigative techniques used in this case were lawful.  Use of

12   evidence obtained pursuant to searches is lawful.

13           Your approval or disapproval of the techniques used or

14   of the fact that particular techniques were not used is not to

15   enter into your deliberations.  Your duty is to determine

16   whether or not based on your evaluation of the evidence before

17   you, the guilt of the defendant has been proved beyond a

18   reasonable doubt.  That is the ultimate issue for your

19   determination.

20           Evidence has been presented about some persons not on

21   trial here, including persons the government contends are

22   co-conspirators.  You may not speculate about the reasons why

23   any person is not named as a defendant in the indictment or is

24   not on trial before you here.  These matters have no bearing on

25   the issues before you.

D4OVLIN3                         Charge

1          In this case, the defendant decided not to testify.

2   Under our Constitution, every criminal defendant has a right

3   not to testify at trial.  You may not draw any adverse

4   inference against the defendant because he did not take the

5   witness stand.  You may not consider this against the defendant

6   in any way in your deliberations in the jury room.

7          You've heard the testimony of witnesses who have

8   testified about a grant of immunity from the Court or who have

9   been promised by the government in written agreements that in

10  consideration for their truthful testimony and cooperation with

11  the government, they will not be prosecuted for any crimes

12  which they may have committed either here in court or in

13  interviews with the prosecutors.

14         With respect to both categories of witnesses, what

15  this means is that the testimony of the witness may not be used

16  against the witness in any criminal procedure, in any criminal

17  case, except a prosecution for perjury, giving a false

18  statement, or otherwise failing to comply with the immunity

19  order of this Court.

20         You are instructed that the government is entitled to

21  call as a witness a person who has been granted immunity.  You

22  may convict a defendant on the basis of such a witness's

23  testimony alone if you find that the testimony proves the

24  defendant guilty beyond a reasonable doubt.  However, the

25  testimony of a witness who has been granted immunity by the

 1   Court should be examined by you with greater care than the

 2   testimony of an ordinary witness.  You should scrutinize it

 3   closely to determine whether or not it is colored in such a way

 4   as to place guilt upon the defendant in order to further the

 5   witness's own interests or such a witness confronted with the

 6   realization that he can win his own freedom by helping to

 7   convict another as a motive to falsify his testimony.  Such

 8   testimony should be scrutinized by you with greater care, and

 9   you should act upon it with caution.  If you believe it to be

10   true and determine to accept the testimony, you may give it

11   such weight, if any, that you believe it deserves.

12          You should ask yourselves whether a witness would

13   benefit more by lying or by telling the truth.  Was the

14   witness's testimony made up in any way because the witness

15   believed or hoped that he would somehow receive favorable

16   treatment by testifying falsely?

17          The charge says "she," but really it should be "he."

18   So when you get to this part of the charge, keep in mind that

19   that's just a typographical error, because all of the witnesses

20   were he's.

21          Was the witness's testimony made up in any way because

22   the witness believed or hoped that he would somehow receive

23   favorable treatment by testifying falsely, or did the witness

24   believe that the witness's interests would be best served by

25   testifying truthfully?  If you believe that the witness was

D4OVLIN3                        Charge

1    motivated by hopes of personal gain, was the motivation one

2    which would cause the witness to lie, or was it one which would

3    cause the witness to tell the truth?

4         These are all matters for you to consider.  Your

5    function is to weigh the evidence in the case, and to reach a

6    verdict based solely upon the evidence and the instructions

7    that I have given and will give you, without resorting to

8    speculation, conjecture, or surmise.

9         The government, to prevail on a count charged in the

10   indictment, must prove the elements of that count beyond a

11   reasonable doubt as I've already explained to you.  If the

12   government succeeds, your verdict should be guilty.  If the

13   government fails, your verdict must be not guilty.  You must

14   consider each charge separately and return a separate verdict

15   as to each count as shown on the verdict form that I will give

16   you.  To report a verdict as to any count, all jurors must

17   agree.  Your verdict must be unanimous.

18        Under your oath as jurors, you may not permit the

19   punishment of the defendant, if convicted, to enter into your

20   deliberations or to influence your verdict in any way.  Your

21   duty is to decide the case solely upon the evidence.  It is my

22   duty -- and my duty alone -- to impose whatever punishment I

23   determine is prescribed by law.

24        Now is the time that each of you should exchange your

25   views with your fellow jurors.  That is the very purpose of

D4OVLIN3                         Charge

1   jury deliberations:  To discuss and consider the evidence, to

2   listen to the arguments of fellow jurors, to present your

3   individual views, to consult with one another, and to reach an

4   agreement based solely on the evidence, if you can do so,

5   without doing harm to your own individual judgment.  Each of

6   you must decide the case for yourself, after consideration with

7   your fellow jurors of the evidence in the case.  But you should

8   not hesitate to change an opinion that, after discussion with

9   your fellow jurors, appears erroneous in light of the

10  discussion and viewed against the evidence and the law.

11  However, if, after carefully considering all the evidence and

12  arguments of your fellow jurors, if you entertain a

13  conscientious view that differs from others, you are not to

14  yield your position simply because you are outnumbered or

15  outweighed.

16          I further instruct you that you should deliberate

17  without sympathy or prejudice as to any party.  The law does

18  not permit jurors to be governed by sympathy, prejudice, or

19  public opinion.  Both the accused and the public expect that

20  you will carefully and impartially consider all the evidence in

21  the case, follow the law as stated by me, and reach a just

22  verdict regardless of the consequences.

23          Now, I am going to ask Juror No. 1, Michael McDonald,

24  to act as foreperson.  The foreperson will chair your meeting.

25  But the foreperson's vote carries no greater weight during your

D4OVLIN3                          Charge

deliberations than that of any other juror.

When you begin your deliberations, a copy of this charge and a verdict form will be sent into the jury room with you.  You will also receive a copy of the indictment.  You may request that any exhibit be sent to you in the jury room; that is, any exhibit that has been received in evidence.  If it is necessary during the course of your deliberations, you may also request that particular testimony be read back to you.  But please remember that it's not always easy to locate the particular testimony that you want to hear.  So be as specific as you possibly can.

After receiving your request, I must consult with the lawyers and consider their views on which portion of the transcript would respond to your request.  As you can see, this is a time-consuming process, so please be patient and do not expect an immediate response.

If you have a question or wish to send a message to me during deliberations, put it in writing and have the foreperson sign it, then give the note to the marshal, who will be outside your door, and who will relay it to me.  I will respond to you as promptly as I can either in writing or by calling you into the courtroom so I can address you orally.

When you communicate with me, if you are divided, never state or specify your numerical division at the time.

When you have reached a verdict as to each count,

D4OVLIN3                    Charge

1    please complete the verdict form and give it to the marshal,

2    who will relay it to me.

3        I now have the unpleasant task of separating the

4    alternate jurors.  I say that because Ms. Lamboy, Mr. Silber,

5    Ms. Miller, and Mr. Gica sat and very patiently heard

6    everything.  And I regret that you cannot be part of the final

7    deliberations, but our system would not work if we did not make

8    arrangements for alternates.  However, I cannot excuse you

9    entirely, because of the unpredictability of human affairs.

10   Please be sure that Mr. Daniels has the telephone number at

11   which you can be reached, because it may be necessary to call

12   you back to participate in deliberations.  For that reason, I'm

13   going to ask you to continue to follow my instructions not to

14   discuss this case with anyone until after a verdict has been

15   reached.

16       Thank you for being with us, and thank you for the

17   very close attention which you have given to everything during

18   the trial.  You have performed a very important civic duty, and

19   the community is grateful to you.

20       Now we can swear in the marshal.

21       (Marshal sworn)

22       THE COURT:  All right.  I will give you to take with

23   you into the jury room copies of my charge, copies of the

24   indictment.  I will mark one copy of my charge as Court Exhibit

25   1.  I will also give you a verdict sheet which the foreperson

D4OVLIN3                          Charge

1   will fill out when you have reached a verdict.

2           Now, everyone must be hungry.  So the first thing that

3   will happen when you go to the jury room is you will get lunch.

4           You may now all retire to the jury room.

5           (At 1:23 p.m., the jury retired to deliberate)

6           THE COURT:  We will be in recess until 2:30, but --

7   I'm sorry, until 3 o'clock.  But I do require that one

8   representative of each side be present in the courtroom in the

9   event that we hear from the jury in the interim.

10          Now, I'm going to excuse all of you for lunch for an

11  hour, in any event.

12          MS. BURNS:  Thank you.

13          THE COURT:  But after that, I need to have a

14  representative of each side in the courtroom as long as the

15  jury is deliberating.

16          MR. COHEN:  I'm assuming, your Honor, for the defense,

17  that's going to be me.

18          THE COURT:  I'm not surprised.

19          MR. SKINNER:  Your Honor, there was one small issue

20  with the charge.

21          THE COURT:  Yes.

22          MR. SKINNER:  Something that probably should have been

23  taken out yesterday that I think we all missed.

24          On Page 60, there's a reference to informal immunity

25  written agreements from the government that would be

D4OVLIN3

nonprosecution agreements.  There weren't any nonprosecution

agreements in this case.  To avoid any confusion as to what's

meant, and because we excised any references to nonprosecution

agreements elsewhere, I propose that you simply send the jurors

a brief note indicating that this language occurs, and that you

should disregard it because there were no such written

agreements.

THE COURT:  Fine.

MR. COHEN:  And, your Honor, I would request, if your

Honor is inclined to send in such a note, you include in it

that jurors may base their verdict on the evidence as you

previously told them.

THE COURT:  I'm sorry, I can't hear you.

MR. COHEN:  I'm sorry, your Honor.

If your Honor is inclined to send in a note to the

jury with Mr. Skinner's request on it, which, of course, I

don't object to, I would ask also that you include in it that

the jury may base their verdict on the evidence or on the lack

of evidence.

THE COURT:  I did say that.

MR. COHEN:  You said it once.  But I think there were

probably seven or eight times that you said "on the evidence,"

without saying "lack of evidence."

And my other request, then -- I'm sorry I didn't pick

up on this earlier -- is that your Honor --

D4OVLIN3

1        THE COURT:  It's just too complicated and too late.

2   We should have picked that up at the charge conference.

3        MR. COHEN:  And my other request is that your Honor

4   instruct the jury that prior inconsistent statements are not

5   admitted for their truth, but only as to the credibility of the

6   witness.  I think that's a crucial instruction.

7        THE COURT:  Why?

8        MR. COHEN:  I actually thought it was in there.

9        THE COURT:  What is it that you're talking about?

10       MR. COHEN:  Well, when your Honor told the jury in

11  assessing the credibility of a witness they can consider, among

12  other things, prior inconsistent statements that the witness

13  may have made, I think that your Honor should also instruct the

14  jury that those prior inconsistent statements were not

15  introduced for the truth of those statements, but, rather, only

16  as to assess the credibility of the witness.

17       THE COURT:  Well, what prior inconsistent statements

18  are you talking about?  Are you really talking about the

19  absence from some prior questioning of the answers that were

20  given here; isn't that right?

21       MR. COHEN:  There were some.

22       THE COURT:  What is the clearest inconsistent

23  statement you're talking about?  That was a generalized charge;

24  I didn't really have in mind --

25       MR. COHEN:  What Mr. Lin was alleged to have said when

D4OVLIN3

 1    he came into the room with Little Beijing, which is really the

 2    crucial issue I see in this case.

 3           And I think it's essential that the jury understand

 4    that what's been said in the past is not offered for its truth,

 5    but only as to assess the credibility of the witness.

 6           MR. SKINNER:  Your Honor, prior inconsistent

 7    statements are not hearsay; they are carved out of the meaning

 8    of Rule 801.  I don't think that the proposed instruction is

 9    correct on the law, I think it's confusing, and I think it's

10    unnecessary.

11           THE COURT:  I don't think it will help the jury's

12    deliberations at this stage.

13           Very well.  But I will --

14           MR. COHEN:  To the extent it's necessary, I'll note my

15    exception.

16           THE COURT:  Of course.  I assume that anything I do

17    not grant -- any request I do not grant you except to.

18           MR. SKINNER:  Your Honor, we're excused until 2:30 for

19    lunch, just so I know what time to be back?

20           THE COURT:  2:30.

21           MR. SKINNER:  Thank you, your Honor.

22           THE COURT:  But just let's agree on the language I'm

23    sending the jury.

24           MR. SKINNER:  Thank you.

25           THE COURT:  Actually, I don't think it's appropriate

D4OVLIN3

1   for me to send anything to the jury.  It is the jury's

2   recollection that governs.  And if they think there was any

3   such thing here, they can consider it.  And if they don't think

4   so, they will not consider it.

5           MR. SKINNER:  Okay, your Honor.

6           THE COURT:  Very well.

7           MR. SKINNER:  Trying to avoid confusion, but --

8           THE COURT:  I understand.  I would like to avoid

9   confusion always, but I don't want to create confusion.

10          MR. SKINNER:  I mean I think in the charge it says

11  "you've heard this," so that might create some confusion,

12  because it's coming from the Court.

13          THE COURT:  You have heard what?

14          MR. SKINNER:  It says:  "You have heard testimony of

15  witnesses who have been made promises by the government."

16          So I think it's a little confusing, because then they

17  wonder, Well, which witnesses received those informal -- I

18  guess it says informal.

19          THE COURT:  Excuse me?

20          MR. SKINNER:  Your Honor, I take back what I was just

21  saying.  I understand the Court's ruling.

22          THE COURT:  Very well.  Because I don't think it says

23  exactly what you think, but that's --

24          MR. SKINNER:  No, I was just rereading it myself, and

25  I think I agree with what you're saying.

D4OVLIN3

1      (At 1:30 p.m., a note was received from the jury)

2      THE COURT:  Yes, you discovered it didn't say that.

3      Fine.

4      THE COURT:  I have just received a note from the jury

5  which I will mark exhibit Court Exhibit 2, which reads as

6  follows:

7      We, the jury, request all exhibits received into

8  evidence (both gov. and defense).

9      We also request a list of witness names as they

10 appeared.  I can't read this word.  Is this "here"?  As they

11 appeared here in court for direct examination.

12     MR. COHEN:  Does anybody have a view on whether

13 nicknames should be included, since I referred to them all, for

14 simplicity during my summation, by their nicknames?

15     MS. BURNS:  I think that probably makes sense, as I

16 did the same with a couple of the witnesses.

17     THE COURT:  Fine.

18     MS. BURNS:  They actually acknowledged --

19     THE COURT:  Where they gave it, the nickname, sure.

20     MS. BURNS:  Right.

21     THE COURT:  That's fine.

22     Anthony, we're going to mark this Court Exhibit 2.

23     (Luncheon recess)

24

25

D4O6LIN4

1          A F T E R N O O N   S E S S I O N

2                         3:00

3          THE COURT:  I have given you a note that I received

4     from the jury.  Have you both read it?

5          MS. BURNS:  We have.

6          MR. COHEN:  We have read two notes, your Honor.

7          THE COURT:  Yes.  Thank you.  One of them is much

8     easier than the other.

9          MR. COHEN:  Yes, indeed.

10          THE COURT:  Now, what are the police reports that

11     we're talking about?  Is any of this in evidence?

12          MR. COHEN:  I don't believe so.

13          THE COURT:  I didn't think so.  I thought it was

14     brought out for refreshing recollection.

15          MS. BURNS:  I think the note indicates they have the

16     stipulation that refers to those reports and the times that

17     they were taken.  You see the times are reflected in the note.

18     They may think they are in evidence, but they are not.  We

19     don't have a disagreement.

20          MR. COHEN:  There is one police report that is in

21     evidence.

22          THE COURT:  What is that?

23          MR. COHEN:  It was of the shooting and stabbing on

24     Division Street.  That is in evidence.

25          MS. BURNS:  That is the defendant's police report.

1    They are asking for the statements of the eyewitnesses.

2              THE COURT:  How do you know?

3              MS. BURNS:  They lists.

4              THE COURT:  Yes, you are right.  Those are all the

5    statements of witnesses?

6              MS. BURNS:  That's right.  They were the three

7    individuals.

8              THE COURT:  Who went to the police station?

9              MS. BURNS:  That's right.

10             THE COURT:  Those are not in evidence?

11             MS. BURNS:  They are not.

12             MR. COHEN:  Can I confer with Mr. Daniels for a

13   moment?

14             THE COURT:  Sure.

15             (Pause)

16             THE COURT:  The next thing we have is can the victim

17   of an extortion be a coconspirator to the same extortion?

18             Does either of you have any idea what this means?

19             MS. BURNS:  The only extortion that is charged is the

20   extortion of the bus company owners.  The bus company owners

21   they heard about are both Chen Quo Guang or and Yi Qun, the

22   murder victim.  So from the note I don't really know which or

23   both of them they are asking about.  I didn't think there is

24   any evidence that either of them was a coconspirator.  I think

25   they were both --

D4O6LIN4

```
 1              THE COURT:  To the same extortion.

 2              MS. BURNS:  Right.  It's the only extortion at issue

 3     in the case.

 4              THE COURT:  There certainly was testimony that

 5     initially somebody went to Mr. Lin and asked for his help in

 6     calling off somebody's effort.

 7              MS. BURNS:  Efforts to compete in the company.  That

 8     was Chen.

 9              MR. COHEN:  That is what I thought it was a reference

10     to.

11              THE COURT:  Right.  But when was Chen a victim?

12              MS. BURNS:  Our argument is he was subsequently

13     extorted by the defendant when the defendant asked for

14     additional shares in the company.

15              THE COURT:  You call that extortion?

16              MS. BURNS:  That's our extortion count.

17              MR. COHEN:  Judge, I think there may be a stipulation

18     that was received in evidence that did not go into the jury

19     room.  I am trying to find it.

20              THE DEPUTY CLERK:  No.  It went in.

21              MR. COHEN:  I am sorry.  I saw the one for Ng and

22     Varian.  I didn't see the one for Ming Li.  It was a government

23     exhibit.  It was Government Exhibit 110.

24              THE DEPUTY CLERK:  It's in there believe me.

25              MR. COHEN:  Okay.  Attached to it was Government
```

D4O6LIN4

1       Exhibit 34.

2              THE DEPUTY CLERK:  Yes.  Those are in evidence.  They

3       all went inside.

4              THE COURT:  How would that be the same extortion

5       anyhow?

6              MR. COHEN:  Judge, that was the only thing I could

7       think of in trying to think like a layman about what they might

8       be talking about and who among the players might be considered

9       a coconspirator in an extortion was that if the jury thought

10      that Mr. Lin and Chen, the government's alleged extortion

11      victim agreed to somehow use force to keep the other guy out of

12      the business, the competitor, that is that they are referring

13      to.

14             MS. BURNS:  The note is very unclear.

15             MR. COHEN:  I don't know how to answer the question.

16      Maybe your Honor can ask the jury to be more specific and to

17      clarify exactly what it is that they want.  That would be my

18      request.

19             THE COURT:  Who is the victim of the extortion

20      supposed to be according to the government?

21             MS. BURNS:  Chen and Yi Qun, or his legal name is

22      Zhou, the victim of the murder.

23             THE COURT:  I am not talking about the murder.

24             MS. BURNS:  Right.  But both of them were part of the

25      same bus company that was extorted and the charge and the

D4O6LIN4

1    indictment both read that in their to wit clause that the

2    people extorted were the owners of a bus company and those are

3    the owners that they have heard about in the course of the

4    testimony.

5            MR. COHEN:  I think in the context of the testimony

6    the only person they could only be referring to is Chen.

7            THE COURT:  I think that's right, but that doesn't

8    answer the question.  I think the closest I can come is can

9    someone who was helped by the extorter be considered a victim.

10           MR. COHEN:  That may be it, Judge, but rather than

11   speculate, my request is that your Honor ask them to be more

12   clear.

13           THE COURT:  I will.  I am going to say I do not

14   understand your question about a coconspirator being a victim.

15   Please be more specific.

16           MR. COHEN:  Thank you.

17           MS. BURNS:  Thank you, Judge.

18           MR. COHEN:  Your Honor, with respect to the other

19   note, are you going to tell them that the police reports are

20   just not in evidence and they cannot see them.

21           THE COURT:  Yes.  I will read you what I write in a

22   minute.  I just want to send the first one in.

23           MR. COHEN:  Sure.

24           THE COURT:  Were those police reports brought forth to

25   refresh recollection?

D4O6LIN4

1      MR. COHEN:  Yes.

2      THE COURT:  I am going to say the police reports are

3  not in evidence.  They were only used to refresh recollection.

4      MS. BURNS:  Thank you.

5      THE COURT:  Very well.  I take it you approve of that,

6  Mr. Cohen.

7      MR. COHEN:  Yes.

8      (Recess pending verdict)

9      THE COURT:  In the Lin case we now have a response

10  from the jury.  On page 16 of the charge it states "that the

11  defendant agreed to work with at least one other person in

12  furtherance of the object charged."  In the indictment it

13  states that the owners of the bus company are the victims.  In

14  this one, Quo Quang Chen was one victim.  Can he also be the

15  other person stated in the charge?

16      MR. SKINNER:  Can't be the coconspirator working with.

17      THE COURT:  This explains why they say how can he both

18  be the victim and the coconspirator.

19      MR. COHEN:  That supposes I think that the extortion

20  victim is somebody other than who the government says is it.

21      MR. SKINNER:  Not necessarily.

22      THE COURT:  No.  It says in this case Quo Quang Chen

23  was one victim.  Can he also be the "other person" stated in

24  the charge?  They quote from the charge "that the defendant

25  agreed to work with at least one other person in furtherance of

D4O6LIN4

1   the object charged."  The defendant agreed to work with him to

2   get his friend to not extort him.

3          MR. COHEN:  I think we both agree the answer is no.

4          MS. BURNS:  No.

5          THE COURT:  Is Quo Guang Chen an owner of a bus

6   company?

7          MR. COHEN:  Yes.

8          MS. BURNS:  He is.

9          MR. COHEN:  He is the person that the government

10  alleges is the extortion victim.

11         THE COURT:  I understand.

12         MR. COHEN:  He was the owner of a bus company.

13         THE COURT:  Well, who is the other person?

14         MR. COHEN:  The other person could be the

15  coconspirators at the park.  It could be the person engaged in

16  the murder in the karaoke room with the defendant on his

17  orders.  I think we should probably just instruct them, No, you

18  must find that the defendant worked with someone other than Quo

19  Quang Chen in furtherance of the extortion to be an extortion

20  conspiracy.

21         THE COURT:  How can they?

22         MR. COHEN:  There is none.

23         MR. SKINNER:  There is.

24         THE COURT:  What is the evidence?

25         MR. SKINNER:  There were two followers in the Corona

D4O6LIN4

Park, Queens that met with the defendant when the defendant

threatened the victim, Quo Guang Chen and one of them touched

his side gesturing to the gun.

          THE COURT:  There is no basis that the jury could find

that the --

          MR. SKINNER:  I am not saying that is the same person.

I am saying someone he worked with.

          MR. COHEN:  Judge, I think the simplest, most direct

and least prejudicial answer is to simply say no.  The question

calls for a yes or no answer.  I think the answer is no.

          THE COURT:  All right.

          MR. COHEN:  Judge, I will note for the record that for

all the notes that have come up to now, I would waive Mr. Lin's

presence and I will decide on a note by note basis.

          THE COURT:  He has to waive his appearance.

          MR. COHEN:  I will consult with him.

          THE COURT:  Go ahead.  He is right inside here.

          (Pause)

          THE COURT:  This is what I propose to writing.

          You talked to Mr. Lin?

          MR. COHEN:  I did.

          THE COURT:  What did he say?

          MR. COHEN:  He said that he is very satisfied to have

waived his presence for the notes that have been discussed up

until now, but he would like to be present for any future notes

D4O6LIN4

1     that come out.

2             THE COURT:  Very well.  What I propose to tell the

3     jury is a person cannot be both a coconspirator and a victim of

4     an extortion.  I was just reading the response.

5             MS. BURNS:  That sounds good.  Thank you, your Honor.

6             (Pause)

7             THE COURT:  Request for testimony read back.

8             MR. COHEN:  I am sorry, Judge?

9             THE COURT:  I was going to read a new note that I just

10    received, request for testimony read back.  Quo Guang Chen's

11    discussion on direct examination regarding a phone conversation

12    with the defendant when Mr. Chen stated that he would not pay

13    $2,000 to the defendant.  We request to know his -- in regard

14    to this entire phone call and related cross-examination.  To

15    know his testimony in regard.

16            Also, is Quo Guang Chen's testimony regarding the

17    phone call with the defendant after the murder.

18            Do we have the transcript?

19            MR. SKINNER:  I can find the direct testimony.  I am

20    not sure if Mr. Cohen crossed him on this or not.  I will have

21    to look it up, Judge.

22            THE COURT:  The question clearly they have a pretty

23    good recollection what happened, but I think they actually

24    combined two things together.  The phone called concerned a

25    request for an additional 10 percent of the company and then it

D4O6LIN4

1    was the following day at the meeting in Corona Park, Queens

2    when he actually then agreed to give him $2,000.

3              Should we pull the testimony just for the phone call

4    or both?

5              MR. COHEN:  I think the jury should get what it asks

6    for.

7              THE COURT:  Yes.  Testimony read back of Quo Guang

8    Chen's discussion on direct examination regarding a

9    conversation with the defendant.  I can't read the middle word.

10   Mr. Chen's stated that he would not pay $2,000 to the

11   defendant.  We request to hear his testimony in regard to this

12   entire phone call and the related cross-examination.

13             Also, Quo Guang Chen's testimony regarding the phone

14   call with the defendant after the murder.

15             MR. SKINNER:  The testimony with regard to the phone

16   call starts on page 322 at line 8 and it includes a rough time

17   frame, which I think should answer the jury's question whether

18   it was before or after the murder.

19             THE COURT:  All right.

20             MR. SKINNER:  Your Honor, how do you do read backs?

21             THE COURT:  I am going to bring them into the

22   courtroom.

23             MR. SKINNER:  Do you want to us prepare the

24   transcripts, or do you have the court reporter read it back

25   omitting the objections?  Logistically I have never done it

D4O6LIN4

 1   before.

 2        THE COURT:  I see.  It works in different ways.  I can

 3   just take a page of the transcript and expurgate everything

 4   that doesn't apply to it.  That is one way of doing it.

 5        MR. SKINNER:  Probably the easiest.

 6        THE COURT:  On a discreet matter it is probably the

 7   easiest.

 8        MR. SKINNER:  We'll give you the pages and line

 9   numbers that apply.

10        THE COURT:  If you hand it up, I will know.  We'll

11   make a copy.

12        MS. BURNS:  Your Honor, may we see the note recording

13   the two phone calls?

14        THE COURT:  Yes, of course.

15        MS. BURNS:  Thank you.

16        MR. COHEN:  I have it on my lap top.  What page?

17        MR. SKINNER:  They are talking about the phone call at

18   339.

19        Are you going to read it or the reporter?

20        THE COURT:  We're going to send it in.

21        MR. COHEN:  With redactions and objections and things?

22        THE COURT:  Of course.

23        MR. SKINNER:  Let's agree on the page numbers and page

24   number.

25        THE COURT:  That's fine.

D4O6LIN4

1          (Recess pending verdict)

2          MR. COHEN:  We're going to go down to the command

3     center, agree on the transcript.

4          MR. SKINNER:  We agreed on the applicable pages and

5     lines.

6          THE COURT:  That's fine.

7          MR. COHEN:  I don't want to be responsible for it so I

8     am going to hand the note and envelope that it came in back to

9     the clerk.

10         THE COURT:  Absolutely.  You should do that.

11         (Recess pending verdict)

12         THE COURT:  I have received another note from the

13    jury.  This is a very actively writing jury.  Request for

14    testimony to read back Huo Guang Chen's testimony from the

15    Corona Park incident.  There were several times this was

16    mentioned.  We request all the testimony.

17         Mr. Burns, have you heard the note?

18         MS. BURNS:  I have.

19         THE COURT:  I wasn't looking in that direction.

20         MR. SKINNER:  We heard it.  We will gather that.

21         MS. BURNS:  We have the other testimony ready.

22         THE COURT:  That has been agreed to?

23         MR. COHEN:  Yes, your Honor.  We agreed to what is

24    here.  I've looked at the redactions.  I have approved them and

25    we're ready to send them in when you are.

D4O6LIN4

1          THE COURT:  Very well.  We'll give them to

2   Mr. Daniels.

3          MR. SKINNER:  We'll get to work on the next one.

4          THE COURT:  If you would like to read it, you are

5   welcome to.  We're mark it Court Exhibit 11.

6          (Recess pending verdict)

7          THE COURT:  We have one more jury note, which I would

8   like to answer in the affirmative.  Can we go home now?  Can we

9   have the room open at 9:00 a.m. tomorrow?  I have ascertained

10  that both Mr. Daniels and the marshal will be available at 9:00

11  tomorrow morning.

12         MR. SKINNER:  We will as well, your Honor.

13         THE COURT:  We will continue deliberations to tell

14  them that.

15         MR. COHEN:  I don't want to be heard, Judge.

16         THE COURT:  They are going to continue their

17  deliberations.

18         MR. COHEN:  Do you want us here at 9:00 as well?

19         THE COURT:  I think you have to be.

20         MR. COHEN:  Can the marshals have my client here?

21         MR. SKINNER:  We can order him for 9:00.  I am not

22  sure what time they can produce him, but we'll order him at

23  9:00.

24         THE COURT:  Let's get the jury in and let's let them

25  go home.

D4O6LIN4

1              (In open court; jury present)

2              THE COURT:  Members of the jury, the answer to the

3    question "Can we go home now" is yes and indeed you should be

4    here to continue your deliberations at 9:00 tomorrow morning.

5    But I should tell you that all of you have to be here in order

6    to deliberate, which means that you may not begin your

7    deliberations until everybody is in the jury room.  That means

8    that you all are responsible to each other to get here at 9:00

9    in the morning for a follow-up question on that.

10             UNIDENTIFIED JUROR:  Can some of us come early, they

11   would spend more time reading the indictment and charge.

12             THE COURT:  I don't know if anybody is going to be

13   here to guard the room.

14             UNIDENTIFIED JUROR:  I mean at 9:00 in the morning as

15   opposed to beginning deliberations.

16             THE COURT:  I see.  Once you all gather, you can agree

17   on whatever procedure you want to agree on in terms of how you

18   are going to deliberate; but you should not hold up the whole

19   group.  If one of you has a question, you should present it to

20   the group and there is no reason why the group cannot look at

21   whatever it is that you have in there at the time that the

22   issue arises.  But you shouldn't all be working on different

23   things.  You should be concentrating on the verdict form and

24   taking it in sequence because that is the way you will have a

25   more orderly deliberation and a more likely to complete your

D4O6LIN4

1    deliberation in an efficient fashion.  Thank you all for your

2    conscientious performance of a very important civic duty and

3    you will continue again at 9:00 tomorrow morning.  Have a

4    pleasant evening.

5              (Jury excused)

6              THE COURT:  Anything further?

7              MR. COHEN:  Not from the defendant.

8              THE COURT:  You are all excused.

9              (Adjourned to April 25th at 9:00 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25