Eal1lins

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                             11-CR-114 (MGC)

XING LIN,

               Defendant.              Sentencing

------------------------------x
                                       New York, N.Y.
                                       October 21, 2014
                                       2:47 p.m.

Before:

               HON. MIRIAM GOLDMAN CEDARBAUM,

                                       District Judge


                         APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
BY:  PETER M. SKINNER, ESQ.
     JENNIFER E. BURNS, ESQ.
     Assistant United States Attorney

JOEL E. COHEN, ESQ.
     Attorney for Defendant


ALSO PRESENT:  LILY LAU, Chinese Interpreter
```

Eal1lins

1              (Case called)
2              THE COURT:  Mr. Lin, have you read the presentence
3     report?
4              THE DEFENDANT:  Yes.
5              MR. COHEN:  Your Honor, just so the record is clear,
6     Mr. Lin doesn't read English.  I've reviewed the presentence
7     report with him verbatim.
8              THE COURT:  I'm sorry.  Yes, he knows English, right?
9              MR. COHEN:  He doesn't read English, Judge, and he
10    speaks very little.
11             THE COURT:  I see.  Well, did you translate it for
12    him?
13             MR. COHEN:  Yes.
14             THE COURT:  Good.  All right.  Do you have any errors
15    you would like to bring to my attention?
16             MR. COHEN:  No, your Honor.
17             THE COURT:  Then I will hear anything you want to tell
18    me and anything your lawyer wants to tell me in connection with
19    sentence.
20             MR. COHEN:  Would you like to hear from Mr. Lin first,
21    your Honor?
22             THE COURT:  As you wish.
23             MR. COHEN:  Judge, this is a statement that the
24    defendant essentially dictated to me, which I've had rendered
25    into Chinese so he can read it to you.

Eal1lins

1           THE COURT:  I see.  But it doesn't come from him
2    originally.
3           MR. COHEN:  No.  I'm saying he essentially dictated it
4    to me during a lengthy conference at the MCC.  I then read it
5    back to him confirming that they were his words and asked the
6    interpreters to translate it into Chinese so that he would be
7    able to read it to you.
8           THE COURT:  Well, did he tell you, though?
9           MR. COHEN:  I'm sorry, Judge?
10          THE COURT:  That is an accurate reflection of what he
11   told you?
12          MR. COHEN:  Yes, ma'am, and I confirmed it with him
13   just now once again for the third time.
14          THE COURT:  Very well.
15          THE DEFENDANT:  I am very sorry for the harm I have
16   caused to other people and to my community.
17          I didn't come to this country to become a criminal.  I
18   worked at a garment factory for quite some time.  The work was
19   very hard and paid very little.
20          I have been gambling for many years and saw this as a
21   way to earn a better living.  When you own gambling business in
22   Chinatown, people try to take advantage of you if you aren't
23   strong.  I was drinking and doing drugs and I often got into
24   fights.  As you heard during the trial, I myself have been
25   stabbed and shot and almost died.

I moved my family to Atlanta to get away from being in dangerous situations. Unfortunately, in July 2004, I came back to New York and was at the karaoke in Queens when the shooting there happened.

I know I would probably be convicted after trial and be facing life in jail, and I wanted to accept the offer. I tried to plead guilty but I could not tell you that I order Little Beijing to shoot or kill Yi Qun, because it wasn't my intention. Still, I shouldn't have been there with a bodyguard carrying a gun.

I am very sorry for the families of the victims. I have two children and a wife and I can't imagine how they would feel if it was me that had died.

I am not saying I led a law-abiding life. I did some of the things the witnesses at my trial said was true. My lawyer showed that a lot of their testimony was false.

I know that any sentence you give me will be severe. I ask that you not sentence me to life in prison.

I will be deported to China if I am ever released and will never pose a danger to people in the United States.

If I ever get out of jail, I will be much older and much more mature. It has already been between 10 and 20 years since the conduct I was found guilty of. I am done with that lifestyle and only want to live for my wife and children, who have remained loving and loyal to me through all of this.

1         Thank you.
2         THE COURT:  Very well.  I will now hear what your
3  lawyer wants to tell me.
4         MR. COHEN:  Your Honor --
5         THE COURT:  I have read your submissions, Mr. Cohen.
6         MR. COHEN:  Did you see the one that I submitted this
7  morning, your Honor?
8         THE COURT:  I did.
9         MR. COHEN:  Okay.  I don't have too much to add to
10  those things.  I did want to emphasize the fact that the
11  government did offer Mr. Lin, knowing everything they know
12  about him now, a ten-year sentence.  The government said in its
13  submission that that's not relevant, it doesn't matter.  I
14  think it matters a lot.  Their position now is that he is such
15  a dangerous person that nothing short of a life sentence will
16  protect the community.  I don't see how they can reconcile that
17  with their initial willingness to allow him to plead guilty and
18  receive ten years.  And I note in none of their submissions did
19  they deny that they did have all this information about him at
20  the time that they offered him a ten-year plea.  I don't expect
21  that your Honor will sentence him to ten years, if you sentence
22  him to anything less than life, but I think it's disingenuous
23  of the government to take this position.
24         THE COURT:  I am not here this afternoon to reach a
25  judgment on the government.

Eal1lins

1    MR. COHEN:  I understand that, your Honor.  I
2    understand that.  A sentence of life in this case is not
3    mandatory.  It's recommended by the probation department.  It's
4    recommended by the government.  I'm asking the court to look at
5    the totality of the circumstances, the full picture, and to
6    decide whether a sentence less than life would be sufficient
7    but not greater than that which is needed to accomplish the
8    goals of sentencing set forth in 3553(a).  I think that any
9    sentence that the court imposes will be substantial and
10   significant.
11             I think it's worth noting that, as Mr. Lin said, much
12   of the conduct that came in at trial -- and it's almost
13   difficult to separate what he was charged with and the other
14   crimes evidence that came in and the 404(b) stuff, but much of
15   his conduct happened between 10 and 20 years ago, when he was
16   much, much younger, and although one of the goals of sentencing
17   is to punish, certainly, I think the court can mitigate that
18   punishment with the fact that he was much younger, much less
19   mature, and had a very, very significant problem with alcohol
20   and drugs.
21             THE COURT:  What is the age you are talking about?
22             MR. COHEN:  I'm sorry, your Honor?
23             THE COURT:  What age are you talking about?
24             MR. COHEN:  Early 20s to early 30s.  He's 42 years old
25   now.

        Other than that, your Honor, I would rest on the submissions and ask that your Honor consider very seriously something less than a life sentence. Obviously every judge has their own views of sentencing. A few months ago Judge Dearie in the Eastern District, in a case involving home invasion robberies by a Dominican drug gang, sentenced two shooters to 22 and 27 years. Judge Gleason, a couple of years ago, vacated the conviction because it was his view that the cooperators, although the jury believed them, were not truthful. Vacated the defendants' conviction, released them and sentenced the cooperators to life in prison.

        I'm only bringing these matters up, your Honor, to share the fact that other judges have, despite jury verdicts that would seem to militate in favor of very harsh and lengthy sentences, have exercised discretion and sentenced to less, and I would ask your Honor to do the same.

        Thank you.

        THE COURT: Very well. You may be seated.

        I don't think the government really has anything to add here. I don't think it's appropriate.

        MR. SKINNER: Well, your Honor, one thing not related to the sentence -- if you don't want to hear our views on it, I know you read our written submission.

        THE COURT: I have indeed, and I listened to all of the evidence at the trial. I don't really need additional

Eal1lins

1  argument.
2          MR. SKINNER:  We will not make any argument on that at
3  all.
4          THE COURT:  Good.
5          MR. SKINNER:  There was, at the end of the trial, a
6  motion for a mistrial under Rule 29, and I believe that's still
7  open.
8          THE COURT:  That's correct.  I gather that, yes.
9          MR. SKINNER:  So we feel the court should likely
10  address that before imposing sentence.  Nothing further then.
11          THE COURT:  I deny both of those motions because I
12  think that the evidence fully proves the conclusion that the
13  jury reached in this case.  There was ample evidence to support
14  the jury verdict and I therefore deny a motion for a directed
15  verdict, in effect, to set aside the jury verdict.  And what is
16  the other?
17          MR. SKINNER:  There was a motion pursuant to Rule 29
18  to dismiss the extortion conviction.
19          THE COURT:  That's what I'm addressing, the Rule 29.
20          MR. SKINNER:  Yes, and there was a motion for mistrial
21  based on prosecutorial misconduct in the summation and rebuttal
22  summation.
23          THE COURT:  Once again, I listened carefully and I try
24  to supervise what happens in the courtroom very carefully so I
25  am satisfied that there was not a mistrial in this case, and

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Eal1lins

1     accordingly, I deny the motion for a mistrial.
2             This was a very serious and heavy case, and it is no
3     pleasure to have to sentence a young man to life in prison, but
4     on Counts One, Two, and Three, I do now sentence you, Mr. Lin,
5     to life in prison.  There is no question, based on the evidence
6     in this case, that you are responsible for the death of another
7     human being.
8             Now on Count Four, I set a sentence of 20 years, to
9     run concurrently with the sentence on Counts One, Two, and
10    Three.
11            I do not see the purpose of setting supervised release
12    when life in prison is the sentence.
13            There is a requirement of a fine.  Are you able to pay
14    a substantial fine, Mr. Lin?
15            THE DEFENDANT:  I don't know.  I have to ask my
16    attorney.
17            THE COURT:  Very well.
18            (Defendant and his counsel conferring)
19            MR. COHEN:  Your Honor, Mr. Lin is asking me -- he
20    does not have funds to pay a fine.
21            THE COURT:  Any funds?
22            MR. COHEN:  He says he has no funds to pay a fine.
23            THE COURT:  Well, that's a different statement.  I am
24    asking whether you have any money from your prior business.
25            THE DEFENDANT:  No.

Eal1lins

1     THE COURT:  Have you earned any money since the trial?

2     THE DEFENDANT:  What do you mean by that?

3     THE COURT:  Have you done any kind of work that brings
4 you money?

5     THE DEFENDANT:  Yes.  Since I've been in jail, I have
6 not earned any money.

7     THE COURT:  Well, we understand that.  I'm not talking
8 about that.

9     MR. COHEN:  Well, your Honor, the question was whether
10 he had earned any money since the trial.

11     THE COURT:  Thank you.  I mean since you were arrested
12 the first time.

13     THE DEFENDANT:  I didn't make any money after I was
14 arrested.

15     THE COURT:  But before you were arrested you did, is
16 that correct?

17     THE DEFENDANT:  Yes.

18     THE COURT:  What kind of work did you do for the
19 money?

20     THE DEFENDANT:  I operated a mahjong parlor and buses.

21     THE COURT:  All right.  Well, I do impose a fine from
22 money that you earned before you went to jail of $25,000, which
23 you do not have to pay all at once.  You may pay it in
24 installments.  And I gather that you are working in prison, is
25 that correct?

Eal1lins

1           THE DEFENDANT:  I'm not working in jail.

2           THE COURT:  Isn't there a program under which you are
3    working?

4           THE DEFENDANT:  Not in MCC.  There is no work.

5           THE COURT:  No, but you will be when you are in a
6    federal penitentiary.

7           THE DEFENDANT:  I do not know about that.

8           THE COURT:  All right.  Well, I direct that you pay
9    installments of those payments to you of up to $25,000.

10          MR. COHEN:  Judge, the effect that the imposition of a
11   fine like that will have is that whatever the prison pays,
12   whether it's 12 cents an hour or 50 cents an hour, that
13   probably for the rest of his life Mr. Lin will have no access
14   to any commissary.  Any money that he earns will go toward that
15   fine; any money that's put into his commissary account will go
16   towards those fines.

17          THE COURT:  How much does he earn in that program?

18          MR. COHEN:  I don't know, Judge.  I honestly don't
19   know.  It's certainly not anything close to the minimum wage.

20          THE COURT:  Let me ask the government.

21          MS. BURNS:  Your Honor, as the presentence report sets
22   forth, if the defendant is engaged in a BOP program, the
23   defendant would pay $25 per quarter.  I don't know how that
24   would balance out based on what he's making.  We just don't
25   have that information available.  But they do I think

Eal1lins

1   anticipate this situation and set aside that amount so there
2   would be something left over for the defendant.
3            THE COURT:  Very well.  I will direct that the fine be
4   paid in installments of $1,000 per receipt of income.  I'm
5   sorry.  How much income will he receive?
6            MS. BURNS:  That I'm not sure of, your Honor, but what
7   the probation reports provide -- this is at page 32 -- is that
8   what they recommend is that if the defendant's engaged in a
9   nonUNICOR program, the defendant pay $25 per quarter toward the
10  criminal financial penalties.  However, if the defendant
11  participates in the BOP's UNICOR program, that the defendant
12  pay 50 percent of his monthly earnings consistent with BOP
13  regulations.  So maybe if your Honor would prefer just to
14  follow the language of the presentence report, that seems to be
15  the way BOP administers it.
16           THE COURT:  Very well.
17           MR. COHEN:  And I would ask that the language
18  incorporate the recommendation of the probation department.
19           THE COURT:  Yes.  I do incorporate the recommendation
20  of the probation officer as to the amount of the fine and the
21  installment payment.
22           Now there is also a special assessment of $100 per
23  count, which in this case, since there are four counts, would
24  be $400.  Are you able to pay that now or do you need more
25  time?

Eal1lins

1      THE DEFENDANT:  I don't know if my wife has $400 on
2  her.  Can I ask her?
3      THE COURT:  Yes, of course, you may.
4      THE DEFENDANT:  My sister has it.
5      THE COURT:  Very well.  Then there is a special
6  assessment of $400 that you are also required to pay as part of
7  your sentence.
8      Mr. Lin, I know this is a very heavy sentence and I
9  know you are a young man, and it is a pity that someone as
10 capable as you are should be in this position, but you have
11 brought this on yourself.  I hope you will take the time in
12 prison to think about your life and how you have used it.
13     Is there anything further?
14     MS. BURNS:  Just a couple points, your Honor.
15     One, as we were discussing financial penalties, we had
16 prepared a proposed order of restitution that we provided to
17 counsel in an amount of $425,000.  As you know, your Honor does
18 not have to set restitution today.  You can do so within 90
19 days by statute, but we believe that amount is supported by the
20 trial record and the evidence relating to particularly the
21 extortion offense committed by the defendant.  So we can
22 provide a copy of the order to your Honor.
23     THE COURT:  What you are proposing, right?
24     MS. BURNS:  Yes.  And just so the record is clear, we
25 are not seeking an order of forfeiture because there were no

Eal1lins

1    forfeiture allegations in the superseding indictment.
2              THE COURT:  There is no forfeiture here.  I agree.
3    And whether I will direct restitution depends in part on what
4    it is you are claiming as restitution, since you have not
5    submitted an order.
6              MS. BURNS:  Yes, your Honor, and we have the order
7    itself and we can provide a letter to your Honor just setting
8    forth the support we believe from the trial record for that
9    amount of restitution.
10             THE COURT:  Very well.  Very well.  And I will
11   consider the matter.
12             MR. COHEN:  Does your Honor want to fix a schedule
13   for --
14             MS. BURNS:  I had one more point -- sorry -- regarding
15   the imposition of the sentence.  It's largely academic in some
16   ways, as your Honor has said, the sentence is life
17   imprisonment, but as noted in our submission, the Second
18   Circuit has recently advised that on a 924(j) count, that
19   sentence should be imposed consecutive to the other counts, so
20   we would ask here that Counts One and Two be imposed life
21   sentences to run concurrently, Count Four you've already stated
22   would be 20 years concurrent, and then Count Three be a life
23   sentence imposed consecutive to those other counts.
24             THE COURT:  That makes no sense.
25             MS. BURNS:  I agree.  It's largely academic.  I'm just

1     trying to follow the Second --
2             THE COURT:  Well, I don't think the Second Circuit has
3     asked whether two life sentences have to be consecutive.
4             MS. BURNS:  Well, we're only asking that the
5     consecutive sentence be the one related to the 924(j) count
6     here.
7             THE COURT:  It doesn't matter.  Any consecutive
8     sentence of life.
9             MS. BURNS:  I agree.  It seems somewhat form over
10    substance.  However --
11            THE COURT:  It's not something that a court should
12    entertain.  But thank you.
13            MS. BURNS:  And the government would move to dismiss
14    the underlying indictment and information filed in this matter.
15            THE COURT:  And that motion is granted.
16            MS. BURNS:  Thank you.
17            THE COURT:  Is there anything further?
18            MS. BURNS:  Just, I'm sure your Honor already intends
19    to do so, to advise the defendant of his right to appeal.
20            THE COURT:  Yes.  Mr. Lin, as was just requested, I do
21    advise you that you have a right to appeal my sentence.  Do you
22    understand that?
23            THE DEFENDANT:  Yes.
24            THE COURT:  And if you wish to do so, you should
25    advise your lawyer promptly because he has a short time in

Eal1lins

1   which to file a notice of appeal, ten days.  So that's
2   something you should promptly discuss with your lawyer, the
3   appeal of the sentence.
4              MR. COHEN:  Your Honor, I've already discussed
5   requesting of an appeal with Mr. Lin and his family, and I will
6   be filing a notice of appeal.
7              THE COURT:  Good.  That's fine.
8              Is there anything further?
9              MS. BURNS:  No, your Honor.  Thank you.
10             MR. COHEN:  No, your Honor.
11             THE COURT:  Very well.  Then this matter is adjourned.
12             MR. SKINNER:  Thank you, your Honor.
13                               o0o
14
15
16
17
18
19
20
21
22
23
24
25